Forrest F. McCLUNEY, Plaintiff,

v.

JOS. SCHLITZ BREWING COMPANY,
Defendant.

No. 79-C-647.

United States District Court,
E. D. Wisconsin.

Jan. 13, 1981.

J. Michael Vaughan, Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, Mo., and Robert E. Tehan, Charne, Glassner, Tehan, Clancy & Taitelman, Milwaukee, Wis., for plaintiff.

Paul V. Lucke and Scott Hansen, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, Wis., for defendant.

DECISION and ORDER

MYRON L. GORDON, District Judge.

This matter is before me on the motion of the defendant for summary judgment and on the motion of the plaintiff for a discovery conference. Both motions will be denied.

I.

The defendant has moved for summary judgment on the ground that this action is barred by res judicata. The defendant argues that this action, brought under Title VII, 42 U.S.C. §§ 2000e et seq., should have been merged with an action that the plaintiff brought in federal court in Missouri. Proper discussion of this motion requires setting forth the pertinent facts of both this case and the Missouri litigation. The following facts are not controverted.

The plaintiff began his employment with the defendant in Missouri in 1956. In May, 1975, the defendant promoted him from his position as plant manager of the defendant's Winston-Salem plant to the position of vice-president of operations for the entire corporation. This promotion required the plaintiff to transfer to the defendant's corporate headquarters in Milwaukee.

Shortly after the plaintiff began work in Milwaukee, he concluded that his former secretary at Winston-Salem, Mrs. Lois Rinne, would be highly useful in Milwaukee as his secretary or as his executive assistant. He requested that she be promoted and transferred, but this request was denied because Mrs. Rinne was not in the appropriate employee classification to be transferred. The plaintiff objected, arguing that male employees in Mrs. Rinne's classification were routinely reclassified to facilitate promotion and transfer. The plaintiff argued that this differentiation was discriminatory against female employees.

On August 22, 1975, Eugene Peters, the defendant's executive vice-president, informed the plaintiff that Mrs. Rinne would not be transferred. The plaintiff reiterated his belief that this was a discriminatory action. The following Monday, August 25, Mr. Peters summoned the plaintiff to his office and asked the plaintiff whether he stood by his position regarding Mrs. Rinne. When the plaintiff said yes, Mr. Peters told the plaintiff to write out his resignation. The plaintiff refused, and Mr. Peters told him to clean out his desk. When the plaintiff inquired about severance pay, Mr. Peters told him that severance pay was not given to someone who resigned. The plaintiff subsequently published in its management bulletin and in several newspapers that the plaintiff had resigned.

In July, 1975, the defendant had adopted a termination procedure for salaried personnel which codified and made uniform several previous practices. Under that schedule, an employee of the plaintiff's tenure was entitled to $32,500 in severance pay. The defendant refused to give the plaintiff this sum and instead sent the plaintiff a "final salary payment" of $5,535.98 which the plaintiff refused to accept.

The state of Missouri has what is known as the "Missouri Service Letter Statute," Mo.Rev.Stat. § 290.140. On November 7, 1975, the plaintiff requested a service letter of the defendant, asking the defendant to state the true cause of the termination of the defendant's employment, as is required by the Service Letter Statute. In a letter dated November 18, 1975, an agent of the defendant stated: "[Y]our employment as Vice President-Operations was terminated by reason of your resignation."

On February 20, 1976, the plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC). EEOC followed standard procedure and transferred the complaint to Wisconsin's Department of Industry, Labor, and Human Relations, Division of Equal Rights (DILHR). DILHR commenced what eventually became a three year investigation.

During the time that DILHR was investigating his claim, the plaintiff determined that the Wisconsin two-year statute of limitations was running on whatever claim he had for severance pay. The plaintiff waited until the last possible day before filing in Missouri state court an action against the

defendant for severance pay and for willful and malicious violation of the Missouri Service Letter Statute. The defendant removed that action to the United States district court for the western district of Missouri. On January 17, 1980, a jury returned a verdict for the plaintiff on both claims. He was awarded $32,500 on his claim for severance pay, along with $1.00 compensatory damages and $400,000 punitive damages on the service letter claim. The defendant has appealed this judgment, and no part of it has yet been satisfied.

The DILHR investigation continued during this period. The plaintiff's affidavit filed in opposition to the motion for summary judgment details his repeated efforts to expedite the DILHR investigation. Despite repeated assurances that the investigation would be rapidly completed, DILHR did not actually complete its investigation until February 20, 1979, when it issued a finding of probable cause that discrimination had occurred.

Efforts to conciliate the matter with the defendant were unsuccessful, and on June 25, 1979, the plaintiff requested the issuance of a right to sue letter from the EEOC. It was issued, and the plaintiff filed the action at bar, seeking back pay, reinstatement, attorney's fees, and other equitable relief under Title VII, 42 U.S.C. §§ 2000e, *et seq.* Specifically the plaintiff charges that the defendant violated 42 U.S.C. § 2000e–3(a), the relevant parts of which read:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, ... because he has opposed any practice made an unlawful employment practice by this title. . . ."

The defendant contends that it is entitled to summary judgment under the doctrine of res judicata because the "plaintiff will be splitting a single cause of action in his attempt to create a windfall recovery." The defendant argues that the plaintiff has engaged in piecemeal litigation by not bringing his Title VII claim in Missouri along with the two claims litigated there.

The defendant also argues that the claim for severance pay is inconsistent with the claim for back pay in the suit at bar. The defendant further argues that by seeking punitive damages on the service letter claim while not pursuing the Title VII claim the plaintiff "created a substantial and unavoidable risk that a recovery of punitive damages in the Missouri federal court would compensate him for the lost wages and reinstatement claim he was seeking [in the case at bar]."

Moore defines res judicata as it applies to the case at bar in this manner:

"As to the same cause of action a final judgment on the merits by a court of competent jurisdiction 'constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' But it does not operate to bar an action on a different cause of action." 1B Moore's Federal Practice ¶ 0.410[1], pp. 1152–53, quoting *Cromwell v. County of Sac,* 94 U.S. 351, 352 [24 L.Ed. 195] (1877).

Moore further notes: "What is a 'cause of action' for the purpose of res judicata cannot be defined with precision. Clearly mere repetition should not be tolerated, whether this is sought through variation in theory or by pleading new facts." 1B Moore's Federal Practice ¶ 0.410[1], p. 1154.

In *Lambert v. Conrad,* 536 F.2d 1183 (1976), the court of appeals for the seventh circuit held that res judicata barred a second suit for damages for denial of a hearing preliminary to termination of employment when an earlier suit for injunctive relief had been dismissed. "Since both pertain to the same disputed facts and arise out of the same operative facts, they are clearly the same cause of action." *Lambert, supra* at p. 1186.

Subsequently, in *Himel v. Continental Illinois National Bank & Trust Co.,* 596 F.2d

205 (7th Cir. 1979), the same court held that res judicata did not bar a suit alleging misconduct in the management of a trust fund because of an earlier suit to modify the restrictions of the trust's investment clause.

"Because both suits were motivated by the relatively poor investment results, or performance, of the trust, the district court concluded that they arose out of the same factual situation. That analysis, however, confuses cause with effect. Though both suits were directed at an effect, i. e., poor performance of the trust, they arise out of independent factual situations alleged to be the *cause* of that effect. Thus the two suits are premised on different causes of action arising out of different events. . . .

.    .    .    .    .

"A trustee's misconduct in managing the trust is not involved in a determination of whether the settlor's instructions should be modified. Therefore, if Mary and her children had been aware of the Bank's alleged misconduct and had proved it, that fact would not have affected the court's grant or denial of the specific relief requested in the earlier suit.

"The present suit is founded in alleged management misconduct of the Bank, i. e., breach of the fiduciary duty. Unlike the situation in the earlier suit, the presence of changed economic conditions would neither support plaintiffs' request for relief, nor provide the Bank with a defense in the present suit. Thus, the facts (the investment clause restrictions) giving rise to the first suit are not the same as the facts (alleged misconduct) giving rise to the present suit." *Himel, supra* at p. 209.

The defendant argues that the plaintiff's Missouri action for severance pay and violation of the service letter statute and the instant action under Title VII are a single cause of action because all three claims arose from a single factual dispute—the events of August 25, 1975. The defendant contends that for the plaintiff to prevail on any of the claims he must establish an ulterior motive on the part of the defendant, and that for all three claims that ulterior motive must stem solely from those few minutes the plaintiff spent in Mr. Peters' office.

I reject this characterization of the plaintiff's claims. The claim involving the service letter statute involves far more than the events of August 25. To establish his claim under the service letter statute, the plaintiff must demonstrate more than the events and motivations leading to his termination; he must also provide evidence surrounding the period when the service letter was written, almost three months after the August termination. Thus these two claims do not present the same disputed and operative facts. The Title VII claim is grounded in the events up to and including the August 25 meeting; the service letter claim is substantially concerned with the defendant's actions after the termination, especially those surrounding the issuance of the service letter in November, 1975.

I also find that the plaintiff's pursuit of his severance pay claim does not act as a bar to the Title VII claim. As in *Himel*, the two claims do arise out of a common effect, in the case at bar the plaintiff's termination; but, similar to *Himel*, the issues are far different. The severance pay claim is a state law claim based on the principles of contract law; the defendant's alleged misconduct in terminating the plaintiff is irrelevant to the determination of the severance pay issue. Whether or not the defendant had engaged in misconduct under Title VII would have no bearing on the plaintiff's recovery of severance pay. In fact, the parties agreed that evidence of sexual discrimination was irrelevant to the proof necessary in the Missouri action. *McCluncy v. Joseph Schlitz Brewing Co.,* No. 77–0707–CV–W–5 (W.D.Mo. filed December 10, 1979). Thus the ruling in *Himel* is applicable here; the facts surrounding the severance pay action are not the same as those surrounding the Title VII claim and the two are not the same cause of action.

*Himel* also stated: "It is true that a claim may be barred when with diligence it

could have been litigated in the first suit." *Himel, supra* at p. 210. The defendant contends that the plaintiff did not pursue his Title VII claim with diligence because he did not request a right to sue letter in time to enable him to bring the Title VII claim in Missouri. Instead, the plaintiff continued to pursue his administrative remedy.

I reject the defendant's contention that the plaintiff did not act diligently. While it is true that the plaintiff could have obtained a right to sue letter within 180 days of filing his complaint, 29 C.F.R. § 1601.-28(a)(1), I do not find a lack of diligence in his reliance on the administrative remedy. Title VII "was enacted 'to ensure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin.' It creates statutory rights against invidious discrimination in employment and establishes a comprehensive scheme for the vindication of those rights." *Johnson v. Railway Express Agency,* 421 U.S. 454, 457–58, 95 S.Ct. 1716, 1718–19, 44 L.Ed.2d 295 (1975), quoting *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974). A major part of this statutory remedy is an effort to avoid litigation of employment discrimination claims. "When Congress first enacted Title VII in 1964 it selected '[c]ooperation and voluntary compliance ... as the preferred means for achieving' the goal of equality of employment opportunities." *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 367–68, 97 S.Ct. 2447, 2454–55, 53 L.Ed.2d 402 (1977), quoting *Alexander.*

A private right of action was retained in the statutory framework, however. *See* 42 U.S.C. § 2000e–5(f)(1). The private remedy is an alternative form of relief for an aggrieved party; the administrative process is the preferred approach.

"'It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC or the Attorney General as appropriate. However, as the individual's right to redress are paramount under the provisions of Title VII it is necessary that all avenues be left open for quick and effective relief.' 118 Cong. Rec. 7565 (1972).

"These statements clearly indicate that the private remedy allowed by 42 U.S.C. § 2000e–5(f)(1) is only an alternative method for a plaintiff to obtain relief from discrimination. A plaintiff cannot be penalized for choosing to forgo this alternative and electing instead the legislatively and judicially favored method of relying on the administrative processes of the EEOC." *Bernard v. Gulf Oil Co.,* 596 F.2d 1249, 1256–57 (7th Cir. 1979).

In *Bernard,* the court refused to apply the doctrine of laches to a Title VII claim. *Bernard* is equally relevant here; I reject the defendant's argument that the plaintiff did not diligently pursue his claims against the defendant because he relied on the preferred administrative approach.

■ The defendant's second reply brief advances the novel theory that *Johnson* requires the plaintiff to join his Title VII claim with his other claims when he litigated the latter. In *Johnson,* the Supreme Court rejected the contention that the filing of a complaint with the EEOC tolled the statute of limitations on a claim based on 42 U.S.C. § 1981. The Court recognized that its ruling could force an aggrieved party into court to pursue the section 1981 claim before the EEOC had completed its administrative procedures on the Title VII claim, but the Court based its decision on the fact that "the two remedies are truly independent." *Johnson, supra* 421 U.S. at 466, 95 S.Ct. at 1723.

Nowhere in *Johnson* is there any indication that a claimant must curtail his Title VII avenue of relief and join it with another claim. As the Court stated:

"Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief. '[T]he legislative history of Title VII manifests a congressional intent to allow an individu-

al to pursue independently his rights under both Title VII and other applicable state and federal statutes.' In particular, Congress noted 'that the remedies available to the individual under Title VII are co-extensive with the indiv[i]dual's right to sue under the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and that the two procedures augment each other and are not mutually exclusive.'" *Johnson, supra* at p. 459, 95 S.Ct. at p. 1719 (citations omitted).

This analysis supports, not weakens the plaintiff's position. Thus the plaintiff was free to pursue his state law claims independent of his Title VII remedy.

The defendant's argument, if adopted by the court, would have the effect of elevating a common law rule designed to conserve judicial resources over a statutory form of relief created by Congress to eliminate employment discrimination. Such an approach would raise serious constitutional questions regarding the supremacy clause.

The defendant argues that it has been seriously prejudiced by the separate litigation. It first argues that the plaintiff's sex discrimination claim was the subject of extensive discovery in the Missouri action, and that the plaintiff gave "at least 25 depositions from that suit" to DILHR. The defendant has attached to its second reply brief several lengthy "excerpts" of some of these depositions. Apparently this is intended in some way to show that the two actions are the same. I find this argument unpersuasive.

The defendant also argues that because the plaintiff did not present a claim for back pay in the first action, the jury assumed that he had no such remedy and awarded punitive damages to compensate the plaintiff for his lost pay. The defendant has supplied an affidavit from one juror in the Missouri action stating that this is the approach the jury followed. The defendant also contends that the plaintiff's claim for back pay is inconsistent with his claim for back pay.

The plaintiff has countered with two affidavits from other jurors in the Missouri case, stating that the jury followed the trial judge's instructions that the jury was not "to award punitive damages because of any alleged breach of the employment agreement...." The affidavits also state that the award was not based "solely" on a theory of back pay but was calculated "to punish Schlitz for its conduct...."

I decline to engage in an examination of the deliberations of the Missouri jury. The trial court instructed the jury that it could award punitive damages if it found the defendant's conduct to be "willful, wanton, or malicious." The jury awarded the plaintiff $400,000 in punitive damages. The defendant has appealed this award, as is its right. I find no merit in its contention that if the plaintiff had included his Title VII claim in the Missouri action, the jury "probably would not have awarded" the plaintiff such a large sum.

The plaintiff concedes that an award for back pay would have to be reduced by the amount of any severance pay paid to the plaintiff. *See Laugesen v. Anaconda Co.,* 510 F.2d 307 (9th Cir. 1975); *EEOC v. Pacific Press Publishing Association,* 482 F.Supp. 1291, 1317–18 (N.D.Cal.1979). This issue, and any other issue relating to a potential windfall recovery by the plaintiff would more appropriately be raised in the event of a recovery by the plaintiff. Prior to such a recovery, these issues are premature.

In summary, I find the principle of res judicata inapplicable to the case at bar. I am convinced that the plaintiff has not improperly split a single cause of action. Instead the plaintiff properly followed the statutory framework for Title VII claims and also properly preserved his rights on two independent causes of action. I find no merit in the defendant's repeated assertions that the plaintiff has engaged in a clever maneuver to prejudice the defendant and achieve an impermissible double recovery. Such allegations are unsupported by the record before me.

I also find no basis for any argument by the defendant for collateral estoppel on the issue of sex discrimination. The trial judge in the Missouri action stated in a memoran-

dum opinion summarizing a pretrial conference in that case: "At the pretrial conference counsel for the parties mutually agreed that any evidence concerning the charges of sex discrimination brought by the plaintiff against the defendant is irrelevant to this action." *McCluney v. Joseph Schlitz Brewing Co.*, No. 77–0707–CV–W–5, slip op. at p. 1 (W.D.Mo. filed December 10, 1979).

## II

■ The plaintiff has moved for a discovery conference pursuant to Rule 26(f), Federal Rules of Civil Procedure, "so that the parties may, more expeditiously, prepare the matter for trial." The plaintiff has argued that such a conference is necessary because he has propounded a number of interrogatories to which the defendant has objected. The plaintiff further states that the parties attempted to work out their dispute but were unsuccessful; the plaintiff states that the defendant agreed that a discovery conference was necessary.

The defendant is apparently not in total agreement. It is willing to meet to discuss an orderly plan of discovery, but it is not willing to discuss issues that it believes are more properly handled under Rule 37, Federal Rules of Civil Procedure.

Rule 26(f) is a recent addition to the Federal Rules of Civil Procedure, designed to provide a framework to alleviate discovery abuses. The notes of the advisory committee on the Federal Rules state: "It is not contemplated that requests for discovery conferences will be made routinely. A relatively narrow discovery dispute should be resolved by resort to Rule 26(c) or 37(a) . . . ."

I am satisfied that the case at bar presents a discovery dispute sufficiently narrow that a discovery conference is not needed. The plaintiff has propounded various interrogatories; the plaintiff is not satisfied with the defendant's responses, if any. The better course for the plaintiff to pursue is to bring a motion to compel discovery pursuant to Rule 37(a), Federal Rules of Civil Procedure. Accordingly, I

will deny the plaintiff's motion for a discovery conference.

Therefore, IT IS ORDERED that the defendant's motion for summary judgment be and hereby is denied.

IT IS ALSO ORDERED that the plaintiff's motion for a discovery conference be and hereby is denied.

IT IS FURTHER ORDERED that counsel for the parties appear in courtroom 225 at 9:30 A.M., February 10, 1981, in order to acquaint the court of the status of this case.