Forrest F. McCLUNEY, Plaintiff,

v.

JOS. SCHLITZ BREWING COMPANY, Defendant.

No. 79–C–647.

United States District Court, E. D. Wisconsin.

May 14, 1982.

Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke by J. Michael Vaughan, Kansas City, Mo., for plaintiff.

Reinhart, Boerner, Van Deuren, Norris & Rieselbach by Scott W. Hansen, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

The plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* He contends that Schlitz fired him because of his continued opposition to Schlitz' alleged sex discrimination. The background to this litigation is extensively discussed in earlier decisions, *McCluney v. Schlitz,* 504 F.Supp. 1264 (E.D. Wis.1981) and 515 F.Supp. 700 (E.D.Wis. 1981), and need not be set forth here. Discovery has been completed in this action, and a pretrial conference has been held. However, the parties maintain that their trial preparations have been hindered because of confusion over the proper theory of damages. The parties agree that this is a question of law and have submitted a stipulation of facts and briefs on the issue. In effect, the parties have presented cross motions in limine.

The issue at bar is what activity of Mr. McCluney should be included in the calculation of his damages, under the assumption that Schlitz is liable. Mr. McCluney's claim for relief includes a claim for back pay less his "interim earnings" subsequent to his termination, in accordance with 42 U.S.C. § 2000e–5(g). The problem arises because of the nature of Mr. McCluney's termination from Schlitz. After leaving Schlitz, Mr. McCluney says he was unable to find a position equivalent to the high-level management position he held at Schlitz. He instead became self-employed.

The nature of Mr. McCluney's business was to perform various personal services for corporate or partnership ventures engaged in the exploration and development of coal, oil, or gas reserves. These services included the following:

"[N]egotiating with landowners to acquire mineral rights and easements, preparing prospectuses and attracting investors, arranging for subcontractors to drill and develop the leases, maintaining all venture records, paying venture bills, paying investors, maintaining venture checking accounts, and generally functioning as the manager and operator of the projects...." Stipulation of facts, filed March 15, 1982, ¶ 3.

Mr. McCluney was not paid a cash fee for these services. Instead, he acquired an ownership interest in the ventures formed. He eventually acquired ownership interests in 18 such ventures. *See* stipulation, ¶ 2. Some of these ventures have been profitable, others have not. The parties have provided examples of how these ventures have performed. *Id.* at ¶ 4. The nature of these transactions caused Mr. McCluney to have "no net taxable income since at least 1974." *Id.* at ¶ 6; *see id.,* exhs. 1–7; plaintiff's brief, filed March 15, 1982, p. 8, Table I. The parties stipulate:

"McCluney financed his business and personal affairs primarily by pledging his interests in these ventures as collateral for bank loans, which totalled the following:

| "Date | Amount |
| --- | --- |
| 1974 | $197,793.39 |
| 1975 | 214,159.84 |
| 1976 | 404,950.70 |
| 1977 | 485,120.31 |
| 1978 | 488,597.08 |
| 1979 | 549,697.47 |
| 1980 | 728,300.47 |
| 1981 | 914,826.86 |

"On occasion McCluney obtained money by selling some of his venture interests rather than borrowing against them." Stipulation, ¶ 5.

Mr. McCluney included these ownership interests in calculations of net worth prepared for the banks who lent him the above sums and for other reasons. These calculations of net worth ranged from $831,955.00 on May 10, 1975, *id.,* exh. 8, to $1,547,500.00 on May 26, 1981, id., exh. 23. Mr. McCluney maintains that the value of his ownership interests has precipitously declined in

recent months; he placed his net worth at $60,000 in January 1982. Stipulation, ¶ 7.

The plaintiff has also submitted calculations of net worth figured on a cash basis; under these calculations no value is attributed to the ownership interests acquired for in-kind services. Under these calculations, at the end of 1981 Mr. McCluney had total assets of $916,456, and total liabilities of $1,624,655, leaving a negative net worth of $708,199. Plaintiff's brief, filed March 15, 1982, p. 9, Table IV.

The plaintiff argues that he had no interim earnings during these years, because he had no income to report on his tax returns. He contends that any award of back pay can only be reduced by interim earnings "equal to the amount of McCluney's annual net income actually earned on either a cash or taxable net income basis." *Id.* at p. 2. He argues against any inclusion in interim earnings of a value of the in-kind earnings based on his ownership interests. In the alternative, if the in-kind earnings are included, he argues that they should be measured according to their value at the time of trial. The defendant contends that the in-kind earnings are interim earnings for the purposes of Title VII and should be included in the calculation of an award of back pay. Schlitz also maintains that the ownership interests should be valued according to their worth at approximately the time Mr. McCluney received them.

One purpose of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). In *Albemarle* the Court looked to the general rule that the "injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Id.* at 418–19, 95 S.Ct. at 2372. The court of appeals for this circuit has stated: "[P]laintiff's damages are determined by measuring the difference between actual earnings for the period and those which she would have earned absent the discrimination by defendant." *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir. 1979), citing *Waters v. Wisconsin Steel Works of Inter-*

*national Harvestor Co.*, 502 F.2d 1309, 1321 (7th Cir. 1974), *cert. denied* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976).

The foregoing cases are, on their facts, not like the matter at bar. Mr. McCluney was self-employed; he was not an employed worker earning a salary or wages. The principle of these cases is clear; an award of back pay under Title VII should be reduced by the earnings received in the period after termination. Title VII is not a vehicle for a plaintiff to work a windfall recovery.

So far as I can determine, no court has considered the precise issue presented by the facts of this case. The court of appeals for the fourth circuit has recognized that back pay awards should be reduced when the damaged person deliberately foregoes income. *EEOC v. Ford Motor Co.*, 645 F.2d 183, 191 (4th Cir.), *cert. granted,* —— U.S. ——, 102 S.Ct. 565, 70 L.Ed.2d 473 (1981), citing *N. L. R. B. v. Mastro Plastics Corp.*, 354 F.2d 170 (2d Cir. 1965), *cert. denied*, 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966). Courts have also reduced back pay awards for the period when the employee chose to attend school.

"If a discharged employee accepted employment elsewhere, there is little doubt that this could cut off any back pay award. If not, the employee would be receiving a double benefit for the same period of time. Likewise, when an employee opts to attend school, curtailing present earning capacity in order to reap greater future earnings, a back pay award for the period while attending school also would be like receiving a double benefit." *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 267–68 (10th Cir. 1975); *see, e.g., United States v. Wood, Wire & Metal Lathers Local 46*, 328 F.Supp. 429, 444 (S.D.N.Y.1971).

The court of appeals for the fourth circuit has held in a brief reference that a back pay award should be reduced by "the reasonable value of [the plaintiff's] services in her husband's business for which she did not receive any specific salary." *Armstrong v. Index Journal Co.*, 647 F.2d 441, 447 (4th Cir. 1981).

I do not believe that the plaintiff's argument that interim earnings means only net taxable income is supported by the statute, the case law, or common sense. There are two cases decided under labor law principles which are very similar to those of Title VII. In both *N. L. R. B. v. Armstrong Tire & Rubber Co.*, 263 F.2d 680 (5th Cir. 1959), and *N. L. R. B. v. Cashman Auto Co.*, 223 F.2d 832 (1st Cir. 1955), the courts held that the back pay award to a person who was subjected to discrimination, who later became self-employed, should be reduced by the net profits he earned. However, these two cases also do not address the issue at bar, for the circumstances of the discriminated worker were vastly different than those of Mr. McCluney. I do not believe that these cases can be stretched to the result Mr. McCluney seeks. In neither case did the court consider and reject a theory of interim earnings that includes in-kind earnings.

Schlitz cites several common law cases that deducted from damage awards for lost employment certain amounts based on all consideration earned, not merely cash or taxable income. This authority has limited weight in the context of this statutory litigation, but the plaintiff's efforts to distinguish these cases entirely are not persuasive.

Did Mr. McCluney intentionally forestall present income in exchange for a greater income stream in the future, like the student who foregoes income in favor of school so that he will earn more later? Mr. McCluney rejects the suggestion that he intentionally forestalled income so that he could increase his award of back pay; he points to several laws that in essence require these ventures to be structured without any fee being paid to one in Mr. McCluney's position.

For over seven years the plaintiff has been self-employed in a line of work that rewards him not with money but with ownership interests valuable at the time the services were performed and intended to become more valuable as time passed. It would ignore economic reality to exclude Mr. McCluney's in-kind earnings from the calculation of back pay. Plainly, the plaintiff has not been the destitute worker that his tax returns viewed in isolation would indicate. He has profited by trading his services for ownership interests of sufficient value to serve as collateral for substantial bank loans. It is not material that in the past he has valued those interests higher than he now does. I believe that inclusion of Mr. McCluney's in-kind remuneration in calculating his earnings is consistent with the principles of Title VII and the cases discussed above; accordingly, I will adopt the defendant's position.

The parties also dispute when the McCluney in-kind earnings should be valued. The plaintiff argues that the subsequent history of the ventures should be considered; he contends that many of the ventures have not prospered, and the ownership shares have declined in value. Schlitz maintains that the services should be valued as close as possible to the time the plaintiff entered into the bargain to exchange his personal services for an ownership interest. In addition, if the plaintiff's position is adopted, Schlitz asks that discovery be reopened, so that it may explore the plaintiff's claims that the ownership interests have substantially declined in value since discovery was closed.

Mr. McCluney argues that his approach places the risk with Schlitz, since if the ventures go bad, the award of back pay is not reduced; if the ventures are successful, the award is smaller. He argues, without citing any authority, that this suits the principles of Title VII. I do not believe that the act can be stretched that far. For several years, Mr. McCluney enjoyed the benefit of his occupation, including a substantial net worth. Recently, the ventures have apparently turned sour, but to place all that depreciation of value in Schlitz' lap is inconsistent with the principle of making Mr. McCluney whole, for it ignores the good years that went before.

Mr. McCluney's approach also effectively ignores the value of the services at the time they were rendered in favor of a valuation based on matters totally extraneous to that value. The net result of the McCluney

approach is to use the back pay award as an insurance policy for the speculative nature of his line of work. I do not believe that is the purpose of the act.

Schlitz' proposal to value the in-kind services at the time of the receipt more closely satisfies Title VII principles. As Schlitz points out, at the time of the exchange there was an agreed upon value for these services, for the other investors paid cash for equivalent amounts of ownership. For example, in one venture Mr. McCluney received 16% ownership share. At the same time, "three investors each paid $46,000 for their own 16% interests." Stipulation, ¶ 4(a). Presumably, Mr. McCluney's interest was also worth $46,000.

In this example, Mr. McCluney received an ownership interest of 16%; investors paid $46,000 for an equivalent interest. All or part of that value represents the value of Mr. McCluney's services, but several factors may also be present in that value. Mr. McCluney notes that usually his interest was subject to a pay back provision, i.e., the other investors had to receive a certain portion of their investment before Mr. McCluney received anything. In some ventures, Mr. McCluney was a general partner, while the other investors were limited partners. Thus his exposure to losses was far greater than theirs. He also incurred expenses setting up the ventures; these were reimbursed through his ownership interest. Finally, there is the factor of risk generally. Mr. McCluney performed certain services but he did not receive cash; he received a promise of future income through an ownership interest. Thus, the latter is a less certain form of payment, especially given the nature of these ventures. As a result, some adjustment in evaluating worth of the ownership interests may be needed.

My resolution of these issues obviates Schlitz' request for further discovery, and discovery will not be reopened. All that remains in this action is the setting of a trial date. At the pretrial conference, bifurcation of this matter was discussed. In light of the above rulings, I believe that we should bifurcate this trial. The issue of liability will be determined first, and the date of such trial is hereby set for 10:00 A.M. on June 14, 1982. To resolve what housekeeping matters may be necessary, I will meet with counsel at a final pretrial conference at 9:00 A.M. on May 26, 1982. At that conference we will consider the technique to be employed to resolve the issue of damages in the event the plaintiff prevails at the earlier trial.

Therefore, IT IS ORDERED that the plaintiff's motion in limine be and hereby is denied.

IT IS ALSO ORDERED that the defendant's motion in limine be and hereby is granted and in the event a trial is held on the matter of damages, the proof on interim earnings may include proof of the plaintiff's in-kind services, valued at approximately the time the services were rendered.