CARDEN, Raymond C., Appellee,

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Appellant.**

Nos. 87–1292, 87–1296.

United States Court of Appeals, Third Circuit.

Argued Jan. 7, 1988.

Decided June 28, 1988.

Order on Denial of Rehearing Aug. 11, 1988.

Dona S. Kahn (argued), Carol E. Tracy, Alison Pease, Harris & Kahn, Philadelphia, Pa., for appellant/cross appellee.

John P. Hergt (argued), Beth M. Rivers, Donnelly, Huizenga, Wahl & Hagan, P.C., Detroit, Mich., Mark D. Turetsky, Miller, Turetsky & Rule, Norristown, Pa., for appellee/cross appellant.

Before SEITZ, HUTCHINSON and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal arises from an age discrimination complaint filed by Raymond C. Carden, a former employee of Westinghouse Electric Corporation, against that company. Carden's job was eliminated by a reduction in force. He contends that he should have been hired for a new position which consolidated his former job with the job held by another Westinghouse employee, Diane Follett. He claims that Westinghouse's refusal to hire him for this new "consolidated" position was unlawful.

Carden brought suit in the Eastern District of Pennsylvania on December 17, 1984. Carden received a favorable verdict from the jury, which found that Westinghouse had willfully violated the Age Discrimination in Employment Act ("ADEA"), and also found that Carden had properly attempted to mitigate his damages.

The district court subsequently denied Westinghouse's motion for a judgment notwithstanding the verdict and a new trial but granted Westinghouse's motion to vacate the jury's finding of willfulness. Accordingly, on April 23, 1987, the district court entered judgment in favor of Carden for $86,554 and for $25,000 in attorney's fees and costs.

Westinghouse appealed at 87–1292 on a number of issues, the primary issue being liability. Carden has cross-appealed at 87–1296. Carden's cross-appeal is from the district court's order which vacated the jury's finding of willfulness. We reverse the judgment in favor of Carden, remand for a new trial and dismiss the cross-appeal which challenged the district court's order vacating the finding of willfulness.

## I.

Raymond Carden was employed by Westinghouse as the manager of Westinghouse's Records and Micrographics Department in its plant in Lester, Pennsylvania. He had been with the company for eighteen years. In the early 1980's, because of a downturn in business, Westinghouse began to transfer a number of its operations which had been performed in the Lester plant, to a plant in Orlando, Florida.[1] This transfer of operations eventually rendered it impractical to maintain both a Records and Micrographics Department and a Engineering Document Control Department in the Lester Plant. The manager of Engineering Document Control was Diane Follett. Westinghouse, therefore, decided to consolidate the two departments. At the time the decision to consolidate was made, Carden was 46 years old and Follett was 37.

In January 1983, Westinghouse notified Carden that the company was eliminating his position as manager. On June 28, 1983, Westinghouse announced that Follett would assume responsibility for the consolidated departments. The announcement was made by Joseph Clark, who was both Carden's and Follett's immediate supervisor.[2] Carden testified that when he asked Clark why he did not get the job, Clark said, "he thought they wanted a younger person for the job." (A215). Carden was eventually laid off on August 1, 1983.

Westinghouse raises a number of issues on appeal; the most important of which from our standpoint is the asserted error that the district court had improperly received into evidence Carden's testimony that Clark said "he thought they wanted a younger person." We regard the admission of that testimony as critical because our reading of the record reveals no other direct testimony as to age as a factor in Westinghouse's treatment of Carden.[3]

## II.

Westinghouse argues that there was insufficient evidence to support a judgment in favor of Carden. As we understand that argument, it depends on our holding that the statement attributed by Carden to Clark was erroneously admitted in evidence. Without that statement, Westinghouse contends that the judgment against it must be reversed.

In developing this argument, Westinghouse recognizes that a judgment in favor of Carden could be predicated not only on a direct finding of intentional discrimination, but also as the district court charged, by proof through circumstantial evidence, that the three-part *McDonnell Douglas*[4] test had been met. Indeed, the district court charged, among other things:

"Now, the plaintiff may prove his claim either by direct or by circumstantial evidence. By direct evidence, I mean a statement that may be evidence of discriminatory intent. And in this particular case, plaintiff claims that such a statement was made by Mr. Clark ...

Plaintiff may also prove his claim by circumstantial evidence. In order to prevail on this basis, plaintiff must prove his claim by a preponderance of the evidence and in the following manner that I will outline to you at this time.

1. In 1980 Westinghouse employed approximately 4,000 employees at the Lester Plant. By the date of trial, only 800 employees were still employed at Lester. (A250).

2. Carden testified that he had two discussions about the consolidated position with Lenzy Harper, the Plant Controller on June 1 and June 27. (A211–12). Although Carden claims that Harper offered him the consolidated position and that he accepted, Harper testified that he only agreed to consider Carden.

3. The other issues raised on appeal by Westinghouse are: (1) was there sufficient evidence to support the jury's verdict? (2) did plaintiff properly mitigate his damages? (3) did the district court commit reversible error in allowing evidence concerning the emotional effects of Carden's layoff? and (4) did the district court commit reversible error concerning Carden's discussion of his testimony with his counsel?

Carden's cross-appeal raised only one issue: that the district court erred in vacating the jury's finding of willfulness.

4. *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

This is a three-part procedure.

First, the plaintiff must prove four different things. First, that he was in the protected age group, that is between the age of 40 and 70.

Second, that he was qualified to do the job.

Third, that his employment was terminated despite the fact there remained work he was qualified to perform.

Fourth, that a younger individual outside the protected age group was selected to do the work.

If you find that the plaintiff has established these facts by a preponderance of the evidence, you will then come to second part of this procedure and you will consider defendant's reasons for terminating plaintiff's employment.

    *     *     *     *     *     *

Now, these reasons—this moves us to the third part. Do these reasons dispel the inference created by circumstantial evidence that the defendant intentionally terminated the plaintiff's employment because of his age unless you find that the defendant's explanation was a pretext. That is, that the defendant's explanation was not credible or that the plaintiff's age most likely motivated the defendant.

Let me go over some of these concepts again.

In considering the reasons given by the defendant for terminating Mr. Carden, and in determining whether the plaintiff has fulfilled his burden in proving age discrimination in this case, you are to take into consideration the reasons given by the witnesses for the defendant, for the decision to reduce and then either fold in or consolidate or eliminate plaintiff's job and transfer the remaining duties, which have not been moved to Orlando to Diane Follett.

Under the law, the defendant is not required to prove that the reason for its decision was a good reason or that it was a justifiable reason or that it was one that you would agree with. The fact that an employer made an unwise business decision or had other alternatives is not a sufficient basis for finding age discrimination.

Under the law, the defendant may state some non-discriminatory reason for its decision. If you find those reasons credible, then you may accept these reasons as legitimate, non-discriminatory reasons and return a verdict in favor of Westinghouse unless the plaintiff has proven to you by a preponderance of the evidence that the reasons given by the company were merely a pretext for age discrimination. That the reasons given by the company were merely a pretext for age discrimination.

    *     *     *     *     *     *

Plaintiff must show that but for his age, he would not have lost his job."

Tr. Transcript, February 19, 1986 at 65–67. The jury returned a verdict as follows:

THE DEPUTY CLERK: ... has the jury agreed upon their verdict?

FOREPERSON: Yes, we have.

THE DEPUTY CLERK: Do you find that age was a determining factor in the decision to terminate plaintiff, effective August 1, 1983, yes or no?

FOREPERSON: Yes.

DEPUTY CLERK: Do you find that the defendant acted willfully, in deciding to terminate plaintiff, did the defendant show reckless disregard when its conduct was prohibited by the Age Discrimination in Employment Act?

FOREPERSON: Yes.

*Id.* at 73.

Significantly, the jury's liability interrogatory, and hence the jury's answer, is in effect a general verdict. It did not distinguish between the two theories on which the district court charged: i.e. liability predicated on a finding of intentional discrimination, or liability predicated on an indirect finding grounded in the three-part *McDonnell Douglas* formula. Thus, unless we are satisfied that Carden proved both *direct and indirect* liability on the part of Westinghouse, we are compelled to reverse the judgment because the jury's verdict, general in nature, may have rested exclusively on a ground that is not sup-

ported by evidence. *See Avins v. White,* 627 F.2d 637, 646 (3d Cir.), *cert. denied,* 449 U.S. 982, 101 S.Ct. 398, 66 L.Ed.2d 244 (1980).

### A.

Under the three part procedure of *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) an ADEA plaintiff has the burden of establishing a *prima facie* case of age discrimination. The plaintiff must show that he was laid off from a job, or not hired for a job, for which he was qualified. He must also show that a younger person was hired in his stead. After a plaintiff has thereby established a *prima facie* case, the burden shifts to the defendant to dispel the adverse inference by articulating "some legitimate, non-discriminatory reason for the employee's rejection." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

■ If the defendant satisfies the requirement of articulating a non-discriminatory reason for the defendant's action, the ultimate burden then remains with the plaintiff to prove to the trier of fact that the defendant intentionally discriminated against the plaintiff. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 897 (3d Cir.) (in banc), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). A showing that a proffered justification is pretextual, is itself equivalent to a finding that the employer intentionally discriminated. *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1396 (3d Cir.1984). Thus, either by proving discrimination by direct evidence or by proving pretext, the plaintiff is entitled to prevail.

### B.

■ In our jurisprudence it has been established that a general verdict must be set aside where the jury has been instructed that it could rely on two or more independent grounds or claims and one of those grounds or claims turns out to be insufficient. The application of that principle was expressed in *Albergo v. Reading Co.,* 372 F.2d 83 (3d Cir.1966), *cert. denied,* 386 U.S. 983, 87 S.Ct. 1284, 18 L.Ed.2d 232 (1967), where the plaintiff asserted two independent claims for recovery and the jury returned a general verdict without specifying whether its decision was based on the first or second claim, or both. We said:

> Since the evidence was insufficient to warrant submission of the first claim to the jury, the judgment of the court below would be sustainable only if the verdict rested solely on the second claim. The form of the verdict makes it impossible for us to determine whether it rested on the first claim, the second, or both. Where, as here, a general verdict may rest on either of two claims—one supported by the evidence and the other not—a judgment thereon must be reversed.

*Id.* at 86–87 (citations omitted).

The same principle was found determinative in *Avins v. White,* 627 F.2d 637 (3d Cir.1980) where the jury had returned a general verdict awarding $50,000 in compensatory damages for defamation. We reversed the damage judgment because two of the three alleged incidents of defamation were improperly submitted to the jury and it could not be determined whether the jury's general verdict was based on all three of the defamatory statements or on just one or two.

The same result occurred in *United Pilots Association v. Halecki,* 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959), where the jury returned a general verdict under instructions that either unseaworthiness of the vessel or negligence, would render the defendants liable. Because the court held that the doctrine of unseaworthiness was not applicable, a new trial was required with respect to the negligence claim because "[t]here [was] no way to know that the invalid claim of unseaworthiness was not the sole basis for the verdict." *Id.* at 619, 79 S.Ct. at 520.

The Second Circuit's recent decision in *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966 (2d Cir.1987) reflects the same principle and is representative of cases in

other circuits. In *Katara,* the court observed:

> The jury returned a general verdict, which means that its verdict might have been premised upon a finding of a false representation (and reliance) as to safety, margin requirements, or both, or upon a breach of an oral contract. Since there was no basis for a verdict based upon a misrepresentation as to safety, the judgment based on that general verdict cannot stand. *Bone v. Refco, Inc.,* 774 F.2d 235, 242–43 (8th Cir.1985); *Morrissey v. National Maritime Union,* 544 F.2d 19, 26–27 (2d Cir.1976).

*Id.* at 971.

Mindful of the principle that we must be able to ascertain the basis of the jury's verdict where there are two grounds—one valid, the other invalid—we turn to a consideration of the sufficiency of evidence in the present record. First, we consider the direct evidence of discrimination and then we will address the evidence as it pertains to the *McDonnell Douglas* "pretext" formula.

## III.

Westinghouse singles out as error, the testimony given by Carden that his supervisor Clark said "he thought they wanted a younger person." (A215). This testimony was adduced in the context of Carden's failure to be hired for the consolidated position to which Follett succeeded.

Westinghouse contends that this testimony is the only testimony in the entire record which could support a finding of intentional discrimination by reason of age; that it is the only direct testimony, as distinguished from circumstantial testimony, of intentional discrimination; and that it was emphasized as such by the district court in its charge, and by Carden's counsel, in her summation. Moreover, it is the only testimony that could support the

jury's finding of willfulness—a finding, although subsequently overturned by the district court, but which nonetheless is indicative of the jury's focus on that testimony.

■ Westinghouse contends that this statement[5] was improperly admitted because it is double hearsay, that Carden did not provide a proper foundation for each level of the two-level hearsay, *see* Fed.R. Evid. 805, and that without this testimony, there is no evidence to support a finding of intentional discrimination. We are bound to review this contention in light of the record and the district court's charge which instructed the jury that there were two independent bases of decision, one of which was intentional discrimination.

## A.

A district court judge is granted broad discretion in determining what is admissible under the Federal Rules of Evidence. A reviewing court in order to reverse a district court judge's evidentiary ruling, must determine if the district court abused its discretion.

In its motion for a judgment notwithstanding the verdict and a new trial, Westinghouse renewed its earlier objection to the admission of the challenged statement. The district court, in its memorandum opinion denying Westinghouse's motion, ruled that since Clark was Carden's immediate supervisor, the decision to select or not select Carden for the consolidated position was within the scope of Clark's employment, and thus the statement was admissible under Fed.R.Evid. 801(d)(2)(D). (A55). *See e.g. Miles v. M.N.C. Corp.,* 750 F.2d 867, 874–75 (11th Cir.1985). The district court, apparently did not view the statement as being double hearsay, but regarded it as admissible "one-level" hearsay.

---

**5.** At oral argument we raised the question whether Westinghouse had adequately preserved this point for appeal. After reviewing Westinghouse's supplementary material submitted after argument, we are satisfied that this issue was properly preserved. Prior to trial, Westinghouse had moved *in limine* to bar the admission of statements such as the one here at issue. The district court denied Westinghouse's motion and ruled that the evidence was admissible at the same time assuring counsel for Westinghouse that her objection was preserved. Tr. Transcript, February 20, 1986 at 3–5.

■ We are persuaded by Westinghouse's argument that the statement, "they wanted a younger person" involves double hearsay. While the mere statement attributed to Clark may be admissible as a statement attributable to Westinghouse's agent within the scope of his employment, see Fed.R.Evid. 801(d)(2)(D),[6] the problem presented by this particular statement is that Clark is claimed to have said that "they" wanted a younger person. Thus, it is evident that someone (who has never been identified in the record) said something to Clark which he, Clark, in turn repeated to Carden. In order for the statement to be admissible, there must also be a basis for admitting the statement that "they" made. See Fed.R.Evid. 805. That rule provides:

> Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.

The district court did not specifically address this point and our attention has been called to no exception to the hearsay rule which would permit the introduction into evidence of what "they" said to Clark.

Carden argues that there was no double hearsay. He claims that the statement by Clark is just Clark's understanding of what Westinghouse wanted and does not reflect a specific declaration by any other individual. The flaw in this argument is that Carden ignores the fact that Clark said "they wanted a younger person." That statement clearly indicates that someone or more persons other than Clark himself, constituted "they."

Carden next argues that it was obvious that the "they" referred to was Lenzy Harper, the Plant Controller, and that the decision not to hire Carden was well within Harper's scope of employment. He supports this contention by arguing that the testimony indicated that only Harper and Clark were involved in the decision making process to determine who would fill the consolidated position.

While this argument may have some surface appeal, it ultimately falls far short of satisfying us that Carden's statement was admissible. Nowhere in the record is the "they" ever identified as Harper. Carden had the burden of establishing a foundation which would identify the "they" about whom Clark was speaking. By failing to meet that burden, and thus by failing to identify the unknown "they", Carden had failed to meet the evidentiary requirements of both Fed.R.Evid. 801(d)(2)(D) and 805.

A somewhat similar circumstance was presented in *Hill v. Spiegel, Inc.*, 708 F.2d 233 (6th Cir.1983). *Hill* involved an age discrimination suit by a former manager, Hill, against his former employer, Spiegel, Inc. The district court, under Rule 801(d)(2)(D) admitted into evidence statements made by one Spiegel employee, Matthew Baker, that he had been told by other Spiegel employees that Hill had been discharged because of his age.

In *Hill*, unlike the present case, the identity of the declarants was known, but no evidence appeared of record that "matters bearing upon Hill's discharge were within the scope of their employment" *Id.* at 237. Accordingly, the *Hill* court held that the admission of Baker's statement was reversible error.

Here of course, the problem is compounded because not only are the declarants unknown, but, because they are unidentified, the record could not, and does not, establish that any matter bearing upon Carden's hiring and firing was within the scope of their employment. An Eighth Circuit case most closely on point has been called to our attention by Westinghouse.

In *Cedeck v. Hamiltonian Federal Savings and Loan Association*, 551 F.2d 1136 (8th Cir.1977), the court held that the testimony of the plaintiff in a sex discrimination case, regarding the statement made by the defendant's branch manager (Murphy),

---

6. Federal Rule of Evidence 801(d)(2)(D) provides in relevant part that an out of court statement is not hearsay if: [t]he statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment. ...

was inadmissible hearsay because Murphy's statement included a statement made by others who were unidentified. This circumstance is virtually the same circumstance as is presented by our record. Because the Eighth Circuit's analysis is similar to our independent analysis, we reproduce that court's reasoning:

Appellant argues that Murphy's statement was admissible as an admission by party-opponent under Fed.R.Evid. 801(d)(2)(D). An argument for admission of the statement under this rule could be made had Murphy stated in effect to Cedeck that she was qualified except for the fact that she was not a male. Part of Murphy's statement, however, contained a reiteration of what someone told him. Therefore, Murphy's statement to Cedeck is hearsay within hearsay. Rule 805 provides:

Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.

Fed.R.Evid. 805. That part of Murphy's statement which contains a reiteration of what someone told him is not admissible as an admission by party-opponent since the author of the statement is unknown. Furthermore, we do not believe it falls within any of the exceptions to the hearsay rule. Therefore, under Rule 805, the statement is not admissible.

*Id.* at 1138.

While our independent research has revealed no other case addressing the very issue we confront here, we observe that at least in a different, although related context, declarations of unidentified persons are rarely admitted. This is undoubtedly due in part to the heavy burden which rests on the proponent of the evidence to satisfy evidentiary and trustworthiness requirements. *Miller v. Keating,* 754 F.2d 507 (3d Cir.1985) (Utterance of unidentified declarant not admissible under Rule 803(2)).

Because Carden's testimony fails the conjoined requirements of Rules 801(d)(2)(D) and 805, we are obliged to hold that the district court improperly exercised its discretion in admitting this testimony.

■ Thus, we agree with Westinghouse that not only was the testimony inadmissible, but its introduction into evidence was essential, if a finding of intentional discrimination was to be sustained. Furthermore, because we now hold the admission of this testimony was error and that without it there was insufficient evidence to support a finding of intentional discrimination, we must reverse the judgment entered in favor of Carden. We do so, because we have no means of knowing if the jury based its verdict on this insupportable ground.

### B.

■ Having determined that Carden's statement attributed to Clark should not have been admitted and thus, that there was no basis to support a finding of intentional discrimination, we now address the evidence with respect to pretext.

Westinghouse, in addition to other evidence, presented evidence that the reason it eliminated Carden's position was due to an economic downturn, leading to a general reduction of force at the Lester plant. Carden does not dispute this point. Carden does dispute, however, Westinghouse's articulated reason why it did not hire Carden for the consolidated position.

Westinghouse argued at trial that hiring Carden, instead of Follett would violate the company's "no bumping" policy. This policy was described by both Clark and Harper at trial. Upon cross examination by counsel for Westinghouse on this matter Clark testified:

Q: What is the company policy with respect to replacing a lower classified manager who is in a job with a higher classified manager?

A: As far as I understand, the policy is not to.

\*     \*     \*     \*     \*     \*

Q: Can you tell me if there was a policy, when that policy was in effect?

A: It was in effect as far as I know since I worked there that we did not remove a

man from a higher managerial grade and place him in a lower grade position.

Q: I understood it—are you saying you don't place a higher grade person with a lower placed person or vice versa?

A: We don't replace the lower person with a higher person.

Trial Tr. February 13, 1986 at 36–37.

Similarly, Harper testified:

Q: Why was—was Carden given an opportunity to take Diane Follett's job?

A: No, he was not.

Q: Why not?

A: Because we do not let a higher grade management employee displace an incumbent in a lower classified management job.

Q: Did you consider Diane Follett an incumbent in the position?

A: Certainly she was.

Trial Tr. February 14, 1986 at 125–126.

Carden, however, presented evidence to support his argument that the "no bumping" rationale offered by Westinghouse was pretextual. Carden testified that in 1976 he had been bumped by his supervisor and that he then in turn "bumped out" someone subordinate to him. (A194–95, 242–43). He also introduced evidence which would tend to show that the position Follett assumed was a new position, and therefore, she could not have been an incumbent protected by the "no bumping" policy. Thus, Carden argues that if Follett was not an incumbent then the "no bumping" policy was irrelevant.

Carden thus contends that Westinghouse has not offered *any* reason for its refusal to hire him and that he was therefore entitled to prevail in this action. *See Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2950, 57 L.Ed.2d

957 (1978) ("[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration ...") (emphasis in original).

Because we have held that the direct evidence of intentional discrimination cannot support the jury's general verdict, and because arguably, the evidence in this record, even without augmentation, presents at the least a jury question, it is apparent that a new trial must be conducted.

### IV.

While our decision to reverse and remand for a new trial renders further discussion of the other issues on appeal unnecessary, we can anticipate that the issue of mitigation of damages [7] may be raised once again before the district court on retrial. We therefore briefly address this issue in the hope of providing some guidance to the district court on remand.[8]

### A.

The district court held that the consulting business which Carden started after June 1, 1984, constituted a form of mitigation of damages, and that mitigation was not affected by Carden's reinvestment of his business proceeds so as to sustain the business. Accordingly the district court rejected Westinghouse's claim that Carden had failed to mitigate his damages by establishing his own business.

■ It is the defendant's burden to establish that plaintiff failed to mitigate his damages in order to limit successfully a

---

7. Westinghouse also challenges the district court's decision to allow Carden to testify concerning the fact that his wife took a job cleaning rooms in a motel when his severance pay ran out. (A323). Counsel for Carden offered this testimony as evidence supporting Carden's testimony concerning the intensity of his job search. Id. Westinghouse argues that this testimony served to prejudice the jury in Carden's favor because of its emotional content. Because we do not know what evidence will be offered at a

new trial and because the admission of such evidence is within the discretion of the district court judge, no discussion of this issue was necessary.

8. One of the questions raised by Westinghouse on appeal involved Carden's discussions with his counsel during Westinghouse's cross-examination. In light of our remand for a new trial, we perceive no need to address this issue.

plaintiff's back pay award. *See e.g. Ford Motor Company v. EEOC,* 458 U.S. 219, 232, 102 S.Ct. 3057, 3066, 73 L.Ed.2d 721 (1982); *Goss v. Exxon,* 747 F.2d 885, 889 (3d Cir.1984) (Gibbons, J.). To cut off a back pay award, defendants must prove that the plaintiff did not exercise reasonable diligence in seeking employment substantially equivalent to the position he lost. *Ford Motor Company,* 458 U.S. at 231 and n. 14, 102 S.Ct. at 3065 and n. 14; *Nord v. United States Steel Corp.,* 758 F.2d 1462, 1470 (11th Cir.1985). In this case, Westinghouse does not contest that Carden attempted to mitigate his damages up through June 1, 1984. (A314–15). Westinghouse does argue, that after June 1, 1984, Carden devoted his full energies to establishing his own business, and thus from that point in time Westinghouse contends that Carden is not entitled to back pay.

Westinghouse argues, first, that by starting his own business, Carden had in effect withdrawn himself from the employment market. Westinghouse contends that the decision by Carden to start his own business was analogous to a decision to return to school. Either activity, claims Westinghouse, would cut off back pay since Carden would not be actively seeking work, nor would he be available to accept employment while at school or engaged in business. See *Miller v. Marsh,* 766 F.2d 490 (11th Cir.1985); *Washington v. Kroger Company,* 671 F.2d 1072 (8th Cir.1982); *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 268 (10th Cir.1975).

■ The analogy Westinghouse draws between self-employment and a return to school as a full time student, is not persuasive. An individual who attends school as a full-time student does so in order to gain some type of future pecuniary advantage. Such an individual essentially seeks future earnings,[9] while a self-employed person works for *both* current and future earnings. When monetary expectations

are directed only towards the *future,* back pay cannot legitimately be claimed since no present compensation can be expected. However, a self employed individual has present, as well as future, financial expectations. As such, back pay can be properly claimed.

The threshold question may be asked: was Carden's choice to enter into his own business a reasonable method of mitigating damages? The burden to prove that it was not, as stated above, falls on Westinghouse. Westinghouse has not directed us to any evidence in the record which would indicate that Carden was acting unreasonably in starting his own business. Furthermore, it is not disputed that Carden had looked for work unsuccessfully for nearly a year.

■ Thus, we conclude that a self-employed person is "employed" for the purposes of mitigating damages if establishing a business of his own was a reasonable alternative to finding other comparable employment. *See Wangsness v. Watertown School Districts,* 541 F.Supp. 332 (D.S.D. 1982); *McCluney v. Jos. Schlitz Brewing Co.,* 540 F.Supp. 1100 (E.D.Wis.1982).

### B.

■ This still leaves open the question of how to value Carden's self-employment as mitigation of his damages. As we understand the doctrine of mitigation of damages, it is to prevent the wage earner, such as Carden here, from obtaining a windfall, i.e. a double recovery. Such a double recovery would occur unless legitimate post-discharge earnings were offset against the back pay damages claimed. Where the post-discharge employment is evidenced by another salary, mitigation is readily determined. It is not so readily determined where the discharged employee establishes his own business as Carden did.

In such a situation, a number of questions arise. They do so because of the nature of self-employment. For example:

---

9. *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 268 (10th Cir.1975), held: "[W]hen an employee opts to attend school, curtailing present earning capacity in order to reap greater future earn-

ings, a back pay award for the period while attending school also would be like receiving a double benefit."

has the plaintiff drawn a salary which has reduced, if not eliminated the year-end profit? Have personal expenses, normally paid by a wage earner from a salary, been absorbed by the business, e.g., personal car expenses, insurance, vacations and other personal expenses? Have dividends been paid? Have profits been earned? Have particular expenses been appropriately offset against revenues? Have profits been reinvested in capital assets and have reserves been established? If so, how should they be treated in a mitigation context. Has the plaintiff benefited by an increase in value of the business?

While these questions do not exhaust the inquiry, they are but a few of the panoply of questions which must be answered when a plaintiff establishes his own business and asserts his self-employment as proper mitigation. Each of these questions necessarily must be resolved by the fact finder,[10] against a backdrop of the governing principles recited earlier: that the plaintiff should not receive double benefits, and that the burden is upon the defendant to prove by how much, if at all, the back pay award should be reduced. The aggregate economic gain found by the jury would then constitute the offset against the plaintiff's back pay damage award.

Because we have ordered a new trial, there is no need for us to address the parties' arguments with respect to mitigation as they are presented on the instant record. The appropriate time for that discussion will occur when, and if, we are confronted again with this case after retrial.

## V.

Our holding on liability, which necessarily results in a new trial obviously dispenses with the need to comment on Carden's cross-appeal. The cross-appeal was taken from the district court's order which had vacated the jury's finding of willfulness.

The district court judge, in his March 12, 1987 opinion which addressed the post trial motions, reversed the jury's determination that Westinghouse's conduct justified a jury verdict of willful discrimination. That reversal was predicated on two grounds.

First, the district court judge focused on the standard which the jury had been instructed to apply. The district court had instructed the jury, among other things, that in deciding whether or not Westinghouse acted willfully, the jury was to decide "... did the defendant know or show reckless disregard of whether its conduct was prohibited by the Age Discrimination in Employment Act." Tr. Transcript, February 19, 1986 at 60, 68. That standard was derived from *Trans World Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). The district court judge in his opinion pointed out however, that after the jury verdict had been returned, a Court of Appeals decision had been filed which refined the standard to be used in determining willfulness. *See Dreyer v. Arco Chemical Co., Div. of Atlantic-Richfield,* 801 F.2d 651, 656–57, 658 (3d Cir.1986).

*Dreyer* explained that in order to distinguish between a "violation, which is almost always intentional, and a willful violation, leading to double damages," a plaintiff must demonstrate that his employer's conduct was "outrageous." *Id.* The district court's opinion in this case, went on to state "proof of outrageousness, the [*Dreyer*] court explained, properly effectuates Congress' intent of limiting the double damage penalty to the most egregious, i.e., willful, violations. *Id.* at 657–58, 29 U.S.C. § 626(b); *Thurston,* 469 U.S. at 125 [105 S.Ct. at 623]." (A45). The opinion concluded, "therefore, my 'knew or reckless disregard' jury instruction on the issue of willfulness was inadequate because it allowed the jury to automatically award double damages once it determined Westinghouse violated the ADEA." *Id.*

In addition to having recognized a different standard for willfulness, the district court also held that Carden had not presented evidence which satisfied that standard. (A52–53). The district court explained that the statement attributed to

---

**10.** *See e.g. Denton v. Boilermakers Local 29,* 673 F.Supp. 37 (D.Mass.1987); *McCluney v. Jos.* *Schlitz Brewing Co.,* 540 F.Supp. 1100 (E.P.Wisc. 1982.)

Clark that "they wanted a younger person" did not demonstrate outrageousness, and in addition, the district court noted that substantial questions appeared in the record concerning the accuracy of this statement. The district court mentioned as an example, "... plaintiff's own notes of his meeting with Clark indicated that Clark mentioned gender, but not age, as a factor in the dismissal decision." (A53). The district court observed further that no other aggravating factor appeared in the record other than Carden's claim that Harper had reneged on a pledge to hire him (Carden) to fill the job which was ultimately given to Follett.

Thus, the district court's holding that the jury finding of willfulness was in error, was predicated on both legal and evidentiary grounds. However, because a new trial must be held and the evidence at that proceeding may differ from the evidence before us today, our appropriate disposition is to dismiss the cross-appeal as moot, in light of our direction that a new trial is required. We observe, however, that just as the district court was faced with new case law from this court at the time it considered the post-trial motions, so too do we recognize that since this appeal has been pending before us, the Supreme Court has once again addressed the issue of willfulness. *McLaughlin, Secretary of Labor v. Richland Shoe Co.,* — U.S. ——, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). On retrial, we are confident that the jury will be appropriately charged in light of all relevant jurisprudence concerning the issue of wilfulness.

### VI.

After having determined that the only evidence of intentional discrimination had been improperly admitted, we have held that it was impossible to discern the basis of the jury's verdict in favor of the plaintiff, Carden. Thus, as to Westinghouse's appeal at 87–1292, we will reverse the judgment in favor of Carden and we will remand for a new trial consistent with the foregoing opinion. In light of that disposition, we will dismiss Carden's appeal at 87–1296.

### ON REHEARING

The petition for rehearing filed by appellee, Raymond C. Carden, in the above-entitled case, having been submitted to the judges who participated in the decision of this court, and no judge who concurred in the decision having asked for rehearing, the petition for rehearing is denied because among other reasons, appellee's petition relies upon a ground not heretofore advanced before the district court or this court.