

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-1995

# Abrams v Lightolier Inc.

Precedential or Non-Precedential:

Docket 94-5083

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Abrams v Lightolier Inc." (1995). *1995 Decisions.* Paper 80.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/80

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NOS.  94-5083 and 94-5110


BERNARD ABRAMS

v.

LIGHTOLIER INC.; COASTAL FAST FREIGHT, INC.;
THE GENLYTE GROUP, INC.; BAIRNCO CORPORATION

The Genlyte Group, Inc.
Appellant in No. 94-5083

Bernard Abrams
Appellant in No. 94-5110




Appeal from the United States District Court
For the District of New Jersey
(D.C. Civil No. 88-cv-02906)



Argued:  September 12, 1994

BEFORE:  STAPLETON, ALITO and LEWIS, Circuit Judges

(Opinion filed  March 24, 1995)



Margaret L. Moses (Argued)
Law Offices of Margaret L. Moses
85 Livingston Avenue
Livingston, NJ 07068
        and
Kathleen C. Goger
Susan S. Stinger
Stinger & Goger
111 Mulberry Street

Townhouse D
Newark, NJ  07102
        Attorneys for Appellee/
        Cross Appellant

Dona S. Kahn (Argued)
Richard G. Tuttle
Anderson, Kill, Olick & Oshinsky
1600 Market Street
Suite 1416
Philadelphia, PA  19103
        Attorneys for Appellant/
        Cross Appellee

OPINION OF THE COURT

STAPLETON, Circuit Judge:

This matter is an appeal and a cross-appeal from a jury verdict in favor of the plaintiff on his claim under the New Jersey Law Against Discrimination ("NJLAD") and in favor of the defendant employer on plaintiff's federal Age Discrimination in Employment Act ("ADEA") claim.  The appeal and cross-appeal raise issues concerning the appropriate jury instructions in a pretext age discrimination case under New Jersey law, the appropriateness of certain evidentiary rulings, the sufficiency of the evidence, and the propriety of the awards for back-pay damages, attorneys' fees, and costs.  We conclude that the district court did not err in instructing the jury as to the burden of proof required for the NJLAD claim, that any errors with respect to the district court's evidentiary rulings were harmless, that the evidence was

sufficient to support the judgments, and that the district court did not abuse its discretion in failing to reduce the back-pay and attorneys' fees award.  However, we conclude that the district court applied the wrong legal standard in determining the plaintiff's award of costs.  We will therefore remand solely on that issue and affirm the district court in all other respects.[1]

## I.

Bernard Abrams was employed by Lightolier, Inc. ("Lightolier" or "the employer") from January 1970 until his termination on July 3, 1986.  Abrams was hired as a Manager of Physical Distribution.  From 1982 through July 3, 1986, he was the Vice President of Coastal Fast Freight, an in-house trucking company and subsidiary of Lightolier.  In 1981, Abrams organized a system for combining the purchasing power of a number of companies to obtain significant price reductions.  He headed this system, known as Team Purchasing, from its inception until late 1985.  During 1983 and 1984, Abrams was also given primary responsibility for negotiating real estate transactions for Lightolier.  Abrams asserted that between 1982 and 1986, he received ample salary increases and bonuses.  After returning to

---

[1].      The district court had jurisdiction over the ADEA claim pursuant to 29 U.S.C. §§ 623(a), 626(c) and 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.  This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 636(c)(3) (permitting appeal to Court of Appeals from matters tried by consent before U.S. Magistrate Judge) and 28 U.S.C. § 1291.

work following coronary by-pass surgery in the fall of 1985, Abrams claimed that Lightolier began to restrict his job responsibilities. On July 3, 1986, he was terminated. At that time he was fifty-nine years old. Abrams was replaced with a man whom he had hired, trained, and supervised. Abrams estimated that his replacement was about forty years old.

During his tenure with Lightolier, Abrams was responsible for dealing with Midland Transportation Company, Inc. ("Midland"),[2] a company that provided trucking services to Lightolier. In June 1980, Abrams orally agreed to modify the shipping rates in Lightolier's local contract with Midland. The companies performed under the oral modification until Midland sued Lightolier in 1982, claiming that it was being underpaid according to the terms of its written contract. Midland also claimed that Lightolier owed it detention charges for waiting periods caused by Lightolier's delay. During the Midland litigation, Lightolier learned that Abrams and two other employees, Richard Petit and John Zarkoski, had accepted various favors from Midland or its principals.[3] The Midland litigation was settled in late June 1986, just before the jury was to return

---

[2]. Midland was a successor to the trucking company EZ Freight Lines. For ease of reference, we refer to both companies as Midland.

[3]. Abrams was alleged to have taken bribes from Midland's principals and to have received a number of less significant favors such as free car repairs. Abrams has consistently denied the bribery charge and offered explanations to show that he did not act improperly in accepting the other favors.

its verdict.  The Midland litigation cost Lightolier, in settlement and attorneys' fees, almost one million dollars.

Abrams was not terminated when Lightolier first learned of his failure to memorialize the oral modification, of his failure to avoid the detention charges, and of the favors he accepted from Midland.  Instead, he was terminated on July 3, 1986, soon after the Midland litigation had settled.  Michael Whelan, who had become president of Lightolier in 1985, informed Abrams of the termination.  Both Petit and Zarkoski were terminated at that time as well.  Abrams supervisor at the time of his termination was Richard Kurtz.  Believing his termination was part of a campaign to eliminate older workers, Abrams filed charges with the New Jersey Civil Rights Division and the Equal Employment Opportunity Commission.  Subsequently, Abrams also filed a civil action against Lightolier and various parent companies and subsidiaries,[4] alleging he was terminated because of his age in violation of the New Jersey Law Against Discrimination and the ADEA.[5]  The parties consented to trial

_____

[4].      In addition to Lightolier, the complaint named the following companies as defendants: The Genlyte Group, Bairnco Corporation, and Coastal Fast Freight.  Coastal Fast Freight was dismissed by stipulation and Bairnco Corporation was dismissed by the court prior to trial.  Subsequent to Abrams's termination, Lightolier became a subsidiary of The Genlyte Group as a result of a corporate merger in 1991.  The district court therefore entered judgment against Genlyte and it is Genlyte who has filed this appeal.  For ease of reference, we will refer to both Abrams's employer and the appellant/cross-appellee as Lightolier.

[5].      Abrams had also asserted a claim of disability discrimination which was dismissed by the district court prior to trial.  Abrams has not appealed from that order and that claim is therefore not before this court.

before a United States magistrate judge. Prior to trial, the employer moved for summary judgment in its favor. The magistrate judge granted summary judgment in part, dismissing Abrams's claim of disability discrimination under the NJLAD and dismissing one of the defendants, but denied the employer's motion for summary judgment as to the ADEA and NJLAD age discrimination claims. The employer also moved for an in limine order excluding certain evidence, which the district court granted in part and denied in part.[6]

Trial was held before a jury. To support his contention that Lightolier terminated him because of his age, Abrams introduced evidence of prior age-based remarks made by Richard Kurtz, his supervisor at the time of his termination, as well as evidence that he was replaced by a younger employee, and evidence that other older employees at Lightolier had also been mistreated by Kurtz. Lightolier submitted evidence that Michael Whelan, the president of the company, communicated the termination decision to Abrams, that he, rather than Kurtz, was responsible for the Abrams's discharge, and that the reason for the discharge was Abrams's earlier misconduct in connection with the Midland contract.

The case was submitted to the jury as a pretext case, i.e. a case that does not qualify for special treatment under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). However, the

---

[6]. The magistrate judge also severed from this action a counterclaim asserted by Lightolier against Abrams.

court submitted the NJLAD and ADEA claims to the jury under two different standards of proof. To prevail on the ADEA claim, Abrams had to show that age was the sole motivating factor for Abrams's discharge, while he could prevail on the NJLAD claim by showing that age was a determinative factor in the discharge decision. The jury responded to special interrogatories in the following manner. The jury found that the employer's reasons for its actions were pretextual; that age was not the sole motivating factor for Abrams's termination; that age was a determinative factor in his termination; that the employer was liable for back pay, future losses, and damages for pain and suffering, but was not liable for punitive damages under the NJLAD. The district court thus entered judgment in Abrams's favor on the NJLAD claim and in Lightolier's favor on the ADEA claim.

The employer moved for judgment as a matter of law or for a new trial on the ground that the evidence was insufficient to support the verdict against it and Abrams moved for an award of attorneys' fees. The magistrate judge denied the employer's motion for judgment as a matter of law or for a new trial, but ordered a remittitur of all but $2500 of the $100,000 award for pain and suffering, finding Abrams had established mental distress damages only to that extent. Abrams agreed to the remitter and an amended order for judgment against the employer was entered in the amount of $473,953.45. The magistrate judge awarded Abrams attorneys' fees in the amount of $546,379.59 and costs of $240.00. Lightolier filed a timely notice of appeal from the amended order entering judgment in Abrams's favor on the

NJLAD claim and the order denying its motion for summary judgment on the ADEA and NJLAD claims. Abrams filed a protective cross-appeal as to the amended order entering judgment in the employer's favor on the ADEA claim and cross-appealed as to the order awarding him costs.

## II.

Lightolier's arguments on appeal fall into three general categories: arguments relating to (1) the appropriate standard of proof in a pretext case of age discrimination under the NJLAD, (2) evidentiary rulings and the sufficiency of the evidence, and (3) the amount of back-pay damages and attorneys' fees awarded. Abrams cross-appealed as to the award of costs and also filed a protective cross-appeal on the ground that in the event the case is remanded for a new trial, his ADEA claim should be submitted to the jury under the mixed-motives standard of proof. Because we conclude that the instructions as to the NJLAD claim were proper and that the magistrate judge's evidentiary rulings do not require reversal, we need not reach the issue raised by Abrams regarding the standard of proof for his ADEA claim. Because we conclude that the magistrate judge applied the correct standard in instructing the jury as to the back-pay award and in awarding attorneys' fees, but did not apply the correct standard in determining the award of costs, we will remand solely as to the issue of costs.

## III. Standard of Proof Under the NJLAD

In instructing the jury as to Abrams's burden for establishing Lightolier's liability for his discharge, the magistrate judge explained that the standard of proof under the NJLAD and ADEA claims differed, stating:

> As to the federal cause of action . . . [i]t is the Plaintiff's burden to prove, by a preponderance of the credible evidence, that his age was the sole motivating factor for the Defendant's decision to terminate his employment. . . .
>
> \* \* \*
> Under the terms of the state claim, Mr. Abrams must prove by a preponderance of the evidence that age was a determinative factor in the employment decision. In is not necessary under New Jersey law against discrimination that age be the sole motivating factor. If discrimination on the basis of age made the difference in the decision, then discrimination in violation of the statute has been established.
>
> In other words, Plaintiff must prove that but for his age he would not have been discharged.
>
> All right? So under the state law, Plaintiff, again, must prove by a preponderance of the credible evidence, it is his burden of proof, that age was a determinative factor in the employment decision.
>
> It is not necessary under the state law claim that age be the sole motivating factor. That's the difference.

App. 110-14.

In answering special verdicts, the jury found that Abrams had proven that the employer's reasons for his discharge

were pretextual and that age was a determinative factor in Lightolier's decision to discharge him. The jury also found that Abrams had not proven that age was the sole motivating factor for his discharge. The magistrate judge therefore entered judgment in Abrams's favor on the NJLAD claim and in Lightolier's favor on the ADEA claim.

In instructing the jury that Abrams was required to prove that age was the sole motivating factor in order to succeed on the ADEA claim, the magistrate judge believed he was following the decision of this court in Griffiths v. CIGNA Corp., 988 F.2d 457 (3d Cir.), cert. denied, 114 S. Ct. 186 (1993). The magistrate judge did not adopt that standard for the NJLAD claim, however, concluding that the New Jersey Supreme Court would not necessarily follow the higher standard of proof he understood Griffiths to require. Instead, the magistrate judge concluded that the New Jersey Supreme Court would continue to require a showing that age was a determinative factor in the adverse employment decision.

This court sitting in banc recently clarified the proper standard of proof for an ADEA pretext case in Miller v. CIGNA Corp., No. 93-1773, ___ F.3d ___ (3d Cir. Jan. 23, 1995). There we stated that "in ADEA cases that do not qualify for a burden shifting charge under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), district courts should instruct the jury that the plaintiff's burden is to prove that age played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process." Miller, slip op. at 3,

__ F.3d at __.  We also noted that to the extent that Griffiths v. CIGNA could be read to require an ADEA plaintiff to prove that age was the sole motivating factor for the adverse employment action, it was overruled.  Id. at 17 n.8, __ F.3d at __ n.8.

Our review over the issue whether jury instructions misstate a legal standard is plenary.  Savarese v. Agress, 883 F.2d 1194, 1202 (3d Cir. 1989) (citations omitted); United States v. Adams, 759 F.2d 1099, 1116 (3d Cir.), cert. denied, 474 U.S. 906 (1985), and cert. denied, 474 U.S. 906 (1985), and cert. denied, 474 U.S. 971 (1985).  Our task is to "'determine whether the charge, taken as a whole and viewed in light of the evidence, fairly and adequately submits the issue in the case to the jury.'"  Adams, 759 F.2d at 1116 (quoting Ayoub v. Spencer, 550 F.2d 164, 167 (3d Cir.), cert. denied, 432 U.S. 907 (1977)).  Because New Jersey courts in applying the NJLAD generally follow the standards of proof applicable under the federal discrimination statutes, see McKenna v. Pacific Rail Service, 32 F.3d 820, 827 (3d Cir. 1994) (predicting that the New Jersey Supreme Court would adopt the clarification for proving a federal pretext discrimination case set forth in St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742 (1993), to claims arising under the NJLAD); Grigoletti v. Ortho Pharm. Corp., 570 A.2d 903, 907 (N.J. 1990), we agree with Abrams that the New Jersey Supreme Court would likely adopt our holding in Miller as the proper standard of proof for an age discrimination pretext claim under the NJLAD. The magistrate judge's instructions as to that claim were

therefore proper.[7]  While we note that the instructions as to the ADEA claim may have required Abrams to demonstrate more than he was required to under the appropriate standard, Abrams has not cross-appealed on that ground and we therefore leave the judgment undisturbed as to the ADEA claim.  Because Abrams filed only a protective cross-appeal as to his ADEA claim, and because we conclude below that none of the other grounds for reversal urged by Lightolier have merit, we do not reach Abrams's argument that his ADEA claim warranted an instruction under the standard of proof applicable to mixed-motives Price-Waterhouse cases.

IV.  Evidentiary Rulings

Lightolier argues that the magistrate judge erred in admitting certain evidence proffered by Abrams and in excluding certain evidence that it sought to introduce.  We find that the evidence was properly ruled upon, or if it was admitted or excluded in error, that it did not affect a substantial right of Lightolier in this case.  The district court's evidentiary rulings therefore provide no basis for reversing the jury verdict in this case.  See Fed. R. Civ. P. 61.[8]  We also reject

---

[7].       We also reject Lightolier's argument that the magistrate judge's NJLAD charge was otherwise improper because it required only a showing that age was a motivating factor in the employment decision.  The charge clearly required a showing that age was a determinative factor and explained that this meant a showing of but-for cause was needed.  The charge therefore incorporates the standard articulated in Miller.

[8].       Rule 61 of the Federal Rules of Civil Procedure provides:
           No error in either the admission or the
           exclusion of evidence . . . is ground for

Lightolier's contention that the evidence does not support the verdict against it and we therefore conclude that the district court properly denied Lightolier's motion for judgment as a matter of law.

Lightolier takes issue with a number of evidentiary rulings made by the magistrate judge prior to and during trial. Two of these rulings concern the admission of age-based comments by Lightolier executives. A related ruling concerns the testimony of other Lightolier employees who claimed to have been the subject of age-based employment decisions by one of those decisionmakers. Another ruling concerns the admission of charts prepared by Abrams to represent Lightolier's internal organizational structure and the final ruling concerns the exclusion of Lightolier's evidence concerning its intent in discharging Abrams.

When the district court applies the appropriate legal standard, evidentiary rulings are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion. In re Merritt Logan, Inc., 901 F.2d 349, 359 (3d Cir. 1990); Government of V.I. v. Pinney, 967 F.2d 912, 914 (3d

(..continued)
        granting a new trial or for setting aside a
        verdict or for vacating, modifying, or
        otherwise disturbing a judgment or order,
        unless refusal to take such action appears to
        the court inconsistent with substantial
        justice.  The court at every stage of the
        proceeding must disregard any error or defect
        in the proceeding which does not affect the
        substantial rights of the parties.
Fed. R. Civ. P. 61.

Cir. 1992).  Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is "arbitrary and irrational."  Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 187 (3d Cir. 1990) (internal quotation and citations omitted), cert. denied, 501 U.S. 1217 (1991). Furthermore, under Federal Rule of Civil Procedure 61 errors in the admission or exclusion of evidence can not be grounds for reversal or a new trial if they constitute harmless error. Finally, when a party fails to timely object to the trial court's evidentiary rulings during the proceedings, those rulings are reviewed under the plain error standard.  United States v. Brink, 39 F.3d 419, 425 (3d Cir. 1994).

### A.  Evidence of Age-Based Comments and Employment Decisions of Richard Kurtz

Underlying Abrams's claim that he was discharged because of his age is his belief that during the 1980s there existed a corporate atmosphere at Lightolier unfavorable to older workers and that Richard Kurtz led this "youth movement."  Kurtz was employed as a plant manager at Lightolier's Fall River facility and then as a corporate vice president.  He was Abrams's supervisor during Abrams's last few months with the company.

During the trial, Lightolier objected to two types of evidence that Abrams introduced with regard to Kurtz: (1) evidence of discriminatory remarks made by Kurtz, and (2) the testimony of other older former Lightolier employees who alleged

that they too had been mistreated by Kurtz.  On appeal,

Lightolier argues that admission of this evidence was improper

because Kurtz was not a decisionmaker for purposes of Abrams's

termination and because the evidence was highly prejudicial.  We

reject both arguments.

There was sufficient evidence from which a jury could

reasonably conclude that Richard Kurtz was a decisionmaker for

purposes of Abrams's discharge.  We find it significant that

Steven Klosk, a former Lightolier human resource manager,

testified that in documents submitted to the New Jersey Division

on Civil Rights in response to their investigation of a claim of

age discrimination filed by Abrams, Lightolier indicated that a

number of managers, including Kurtz, participated in the decision

to discharge Abrams.  App. 852-53.  There was other evidence

tending to show a connection between Kurtz and the decision to

terminate Abrams as well.[9]  We thus have no trouble concluding

that the jury could have reasonably found that Kurtz played a

role in Lightolier's decision to discharge Abrams.  Evidence that

Kurtz harbored age-related animus would thus be relevant to

---

[9].      This additional evidence included the following:
evidence that Kurtz was Abrams's supervisor at the time of his
termination; Kurtz's testimony that he had recommended to another
Lightolier executive that the leadership of Team Purchasing be
"rotated" and that he had suggested Doug Pedder as Abrams's
replacement as chair of Team Purchasing; evidence that when
Abrams's secretary was assigned to a new president, Kurtz and
Steven Klosk refused to let Abrams hire a replacement and told
him to use the typing pool; Abrams's testimony that after he
fired a subordinate, Kurtz refused to let him fill that position;
and Abrams's testimony that Kurtz told him in the spring of 1986
that he would have no more real estate responsibilities.

determining whether the discharge decision resulted from discriminatory motives.  See Torre v. Casio, Inc., 42 F.3d 825, 834 (3d Cir. 1994) (noting that evidence of age-biased comments by supervisor could lead to inference that termination decision was made because of plaintiff's age); Armbruster v. Unisys Corp., 32 F.3d 768, 783 (3d Cir. 1994) (same).  Indeed, we have held that discriminatory comments by nondecisionmakers, or statements temporally remote from the decision at issue, may properly be used to build a circumstantial case of discrimination.  See Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 54 (3d Cir. 1989) (finding age-biased comment relevant even when made subsequent to plaintiff's termination); Roebuck v. Drexel Univ., 852 F.2d 715, 733 (3d Cir. 1988) (upholding admissibility of discriminatory comment by decisionmaker made five years before denial of tenure).

Abrams's testimony that he had overheard Kurtz say to another employee "things would begin to hum around here when we got rid of the old fogies," App. 518,[10] and the testimony of another Lightolier employee that she heard Kurtz refer to two plant managers as "a dinosaur" and "the old men," App. 712, were therefore relevant.  For these same reasons, evidence as to Kurtz's attitude toward other older employees and the manner in which he treated them, was also relevant.  See Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (circumstantial evidence

---

[10].  Abrams testified that he understood "old fogies" to refer to senior management above Kurtz, not older employees in general.  App. 611-12.

of discrimination includes evidence "that the employer in the past had subjected [the plaintiff] to unlawful discriminatory treatment, that the employer treated other, similarly situated persons out of his protected class more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of persons"); cf. Josey v. John Hollingsworth Corp., 996 F.2d 632, 641 (3d Cir. 1993) (noting that atmosphere in which a company makes its employment decision can be circumstantial evidence of discrimination).  Both the comments and the evidence of how Kurtz treated older employees were probative of whether Kurtz harbored a discriminatory attitude against older workers, and if credited, that evidence made the existence of an improper motive for the discharge decision more probable.  See Fed. R. Evid. 401 (definition of relevant evidence).

Because we have concluded that this evidence was relevant, the only remaining question regarding admissibility is whether the magistrate judge should have excluded the evidence under Federal Rule of Evidence 403 because its probative value was outweighed by its prejudicial impact.[11]  The magistrate judge's determination of admissibility under Rule 403 is reviewed for abuse of discretion.  Bhaya v. Westinghouse Elec. Corp., 922 F.2d at 187.  Because discriminatory comments by an executive connected with the decisionmaking process will often be the

---

[11].      Lightolier does not argue that the evidence was excludable on any other basis.

plaintiff's strongest circumstantial evidence of discrimination, they are highly relevant and a trial court's decision to admit such evidence should ordinarily be upheld. We perceive no basis for concluding that the magistrate judge's determination to admit Kurtz's age-related comments was an abuse of discretion in this case.

Lightolier also objected to the testimony of five former Lightolier employees who believed they had been mistreated by Kurtz because of their age. Lightolier objects that the testimony was highly prejudicial because it concerned treatment of employees other than Abrams and created the possibility that the jury would find against the employer on the basis of these accusations without finding that it had discriminated against Abrams. Although we find the so-called "testimonials" of former employees to be less probative of Kurtz's discriminatory attitude and more inflammatory than Kurtz's two age-based comments, we cannot conclude that the determination that its probative value outweighed its prejudicial impact was "irrational and arbitrary."[12] See Bhaya v. Westinghouse Elec. Corp., 922 F.2d at

---

[12]. Lightolier's reliance on Haskell v. Kaman Corp., 743 F.2d 113 (2d Cir. 1984), is misplaced. In that case the Court of Appeals for the Second Circuit held that the testimony of six former employees had been admitted in error because their stories did not produce statistically significant evidence of a pattern and practice of discrimination and, thus, any probative value was outweighed by the prejudicial impact of "'a parade of witnesses, each recounting his contention that defendant has laid him off because of his age.'" Haskell, 743 F.2d at 122; see also Moorehouse v. Boeing Co., 501 F. Supp. 390, 393-94 (E.D. Pa.), aff'd without op., 639 F.2d 774 (3d Cir. 1980). However, because the Haskell plaintiff had admitted the evidence to show a "pattern and practice" of discrimination, the court was not

187.    We therefore conclude that the admission of the evidence concerning Kurtz provides no basis for a new trial.

B.    Testimony that Lightolier "Frowned On" Older Workers

Lightolier also objected to the testimony of Milton Hinsch, a former purchasing manager.  Hinsch was in his sixties, worked at the Norwich, Connecticut plant, and reported to Douglas Pedder, Director of Corporate Purchasing.  There was no evidence that either Hinsch or Pedder had anything to do with the decision to terminate Abrams.  However, Hinsch testified that in connection with his performance reviews, Pedder gave him the following explanation about company policy.

> He did tell me that the company frowned on older people, that my raises wouldn't be as high as he would like them to be, and that the company looked at people with gray hair as being in a position where they couldn't do much about it because they probably couldn't get another job.

App. 919.  Hinsch further testified that there had been several discussions with Pedder of the same nature, usually at the time of his performance review, and that Pedder repeatedly expressed the sentiment that the company frowned on older workers. Although Pedder's statement was clearly an out-of-court statement, the magistrate judge admitted it under Federal Rule of Evidence 801(d)(2)(D), which defines as nonhearsay a statement

(..continued)
addressing whether the evidence was probative of a discriminatory attitude on the part of the employees' supervisor.  See Haskell, 743 F.2d at 120.

made by a party's agent concerning a matter within the scope of the agent's employment. The magistrate judge concluded that Pedder was authorized to discuss Hinsch's salary and the company's employment policies with him. Lightolier argues that the statement should have been excluded as double hearsay outside the scope of Rule 801(d)(2)(D).

Where a supervisor is authorized to speak with subordinates about the employer's employment practices, a subordinate's account of an explanation of the supervisor's understanding regarding the criteria utilized by management in making decisions on hiring, firing, compensation, and the like is admissible against the employer. We so held in Zipf v. American Telephone & Telgraph Co., 799 F.2d 889, 894-95 (3d Cir. 1986), citing Rules 801(d)(2)(D) and 701. The Seventh Circuit Court of Appeals more recently so held in Hybert v. Hearst Corp., 900 F.2d 1050, 1053 & n.6 (7th Cir. 1990). We perceive no double hearsay problem because we do not think the supervisor's explanation, if offered through the testimony of the supervisor, would be subject to a hearsay objection.

Lightolier relies primarily on Carden v. Westinghouse Electric Corp., 850 F.2d 996 (3d Cir. 1988). In Carden, this court reversed a jury verdict in an age discrimination case on the ground that a statement attributed to the plaintiff's supervisor had been admitted in error. The plaintiff had been told by his supervisor, in the context of not being promoted to a position he sought, that the supervisor "thought they wanted a younger person." Carden, 850 F.2d at 1001. Over the employer's

in limine objection, the testimony was admitted.  We found that the testimony involved "double hearsay" and that the plaintiff had not identified a basis for overcoming the hearsay objection to the supervisor's account of what the unidentified declarant had told the supervisor about the reason for not promoting the plaintiff.  The statement of the unidentified declarant was being offered to show the reason for the particular employment decision affecting the plaintiff and, because the declarant was unidentified, there was no way of knowing whether he or she was authorized by the employer to make such a statement on this subject.  Because this statement was the only evidence of discrimination supporting one of the two theories the jury could have chosen to support its verdict, we reversed and remanded for a new trial.

In Carden, the supervisor's statement was understood to refer to a specific declaration made to him about the reason underlying a particular employment decision and that declaration was offered for its truth without the required foundation.  That is not the case here.  The magistrate judge understandably viewed Pedder's statement as his opinion regarding company policy.  This case is governed by Zipf, not by Carden.

## C.  Abrams's Organizational Charts

Lightolier also argues on appeal that Abrams introduced "pattern and practice" evidence that was not relevant to his claim and highly prejudicial, and that the admission of this evidence requires a new trial.  The objectionable evidence

consists of two handwritten organizational charts that Abrams prepared from memory and which purported to contain the job titles and ages of the members of Lightolier's management team located at company headquarters at the level of vice president or above in 1982 and 1985 respectively, and a blow up of a chart that appeared in a magazine article written by William Blitzer as president of Lightolier which contained the names and job titles of Lightolier's upper level management, including Abrams.

Lightolier attacks this "statistical evidence" on two grounds: that Abrams's used the testimony of other witnesses to establish a statistical disparity in the treatment of older employees by describing what had happened to the employees listed on these charts, and that because the information on this charts was, as Abrams admitted, incomplete, the evidence was therefore misleading.[13] Finally, Lightolier argues that the evidence should have been excluded because Abrams brought his claim as an individual treatment case and should therefore have been precluded from attempting to prove a "pattern and practice" of age discrimination.

We find Lightolier's arguments unpersuasive. Employment discrimination plaintiffs are not precluded from introducing statistical evidence as circumstantial evidence of

---

[13]. On cross-examination Abrams admitted that the charts were incomplete. However, they were not intended to be and were not introduced as complete organizational charts of company management. For example, his handwritten charts only purported to show the managers at or above the level of vice president at Lightolier headquarters.

discrimination in a disparate treatment case.  Furnco Constr. Corp. v. Waters, 438 U.S. 567, 578 (1978); Bruno v. W.B. Saunders Co., 882 F.2d 760, 766-67 (3d Cir.) ("By contrast [to a class-action or pattern and practice case], in individual disparate treatment cases such as this, statistical evidence, which may be helpful, though ordinarily not dispositive, need not be so finely tuned." (internal quotation and citation omitted)), cert. denied, 493 U.S. 1062 (1989).  The cases cited by Lightolier are not to the contrary.  Gilty v. Village of Oak Park, which Lightolier relies on for the proposition that "pattern and practice" evidence is irrelevant to an individual pretext claim, simply suggests that statistical evidence is only "'collateral to evidence of specific discrimination against the actual individual.'"  Gilty, 919 F.2d 1247, 1252 (7th Cir. 1990) (quoting Williams v. Boorstin, 663 F.2d 109, 115 n.38 (D.C. Cir. 1980), cert. denied, 451 U.S. 985 (1981)).  The court in Gilty did not suggest that such evidence is per se inadmissible.  See Gilty, 919 F.2d at 1253 n.7 (noting that because the court found plaintiff's statistical evidence of only collateral importance it did not have to rule on the employer's motion to strike).  The other cases cited by Lightolier are similar; they note the relative unimportance of statistical evidence in an individual treatment case, but they do not establish a rule that statistical evidence is prohibited.  See, e.g., King v. General Elec. Co., 960 F.2d 617 (7th Cir. 1992); Babrocky v. Jewel Food Co. & Retail

Meatcutters, 773 F.2d 857, 865 n.6 (1985).[14]  More importantly,
the charts were not tendered as statistical evidence; they were
used primarily as testimonial aids to describe the employees'
positions relative to key decisionmakers.  Furthermore,
Lightolier had the opportunity to cross-examine Abrams as to the
deficiencies or inaccuracies in his charts and did so vigorously.
Finally, the only objection Lightolier made regarding the charts
was to the inclusion of the ages on the handwritten charts, thus
its objections to the admission of the charts in general is
reviewed under the plain error standard.  Fed. R. Evid. 103(d).
The admission of these charts was not reversible error.

---

[14].      The court's exclusion of statistical evidence in
Haskell v. Kaman Corp., 743 F.2d 113, 120-21 (2d Cir. 1984), is
distinguishable because the plaintiff in that case attempted to
prove discrimination in part through the use of statistical
disparity and his statistical evidence, because of sample size,
etc., was faulty.

D.  Evidence of Lightolier's Intent

Lightolier's final argument with regard to the magistrate judge's evidentiary rulings is that the magistrate judge improperly excluded as inadmissible hearsay much of its evidence relating to its intent in terminating Abrams.  The excluded evidence concerned statements made by Lightolier president, Michael Whelan, and others about the Midland litigation and Abrams's termination.  Lightolier claims that this evidence was significant because it bolstered admitted testimony concerning how and when Whelan reached the decision to terminate Abrams, and because it contradicted Abrams's evidence that Kurtz was the Lightolier manager responsible for his termination.  For example, Lightolier sought to introduce the testimony of a number of managers who would testify that Whelan had explained to them at an executive meeting that he was going to fire Abrams because of the Midland affair.  The magistrate judge excluded this testimony as inadmissible hearsay.

Lightolier makes substantial arguments (1) that the statements of these witnesses were not hearsay because they were not offered to prove the truth of their content, but rather to show how early Whelan had made a decision to terminate Abrams; and (2) that, if hearsay, they were admissible under Federal Rule of Evidence 803(3) to show the speaker's state of mind.  See, e.g., Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755 (1st Cir. 1994).  We are not persuaded, however, that the exclusion of this evidence resulted in substantial prejudice.  To the contrary, we are convinced that the exclusion was harmless

because the out-of-court speakers, whose statements concerning Abrams's discharge others would testify to, were permitted to testify directly to what they had said and the excluded evidence was therefore only cumulative evidence as to Lightolier's intent.[15]  While it is true that the excluded testimony would have bolstered the speaker's credibility, we can not conclude that its exclusion was prejudicial to Lightolier's case.  We are particularly hesitant to find prejudicial error when the admitted testimony was corroborative; Lightolier's witnesses all maintained that the termination decision was made by Whelan well prior to the termination of the Midland litigation and was based on the facts learned in that litigation, rather than on Abrams's age.[16]  Despite this evidence, the jury concluded that age was in fact a determinative cause of the discharge and we will not disturb that finding on this basis.

---

[15].      For example, Whelan was permitted to testify as to what he said in the executive meeting referenced above and the managers in attendance were permitted to testify as to what they had said prior to and in response to Whelan's explanation.

[16].      While we are persuaded that Kurtz's testimony that he heard of the decision to terminate Abrams from someone else could have been admitted as nonhearsay as it was not offered for the truth of the matter asserted (that Abrams was being terminated) but as evidence that Whelan, and not Kurtz, had made the termination decision, we find this exclusion too was harmless. Kurtz was permitted to testify that he did not make the termination decision and that he learned of the decision in a conversation with others, App. 1386, and Whelan was permitted to testify that he was in fact the person who had made the decision.

E.  Sufficiency of the Evidence

In addition to Lightolier's objections to specific evidence, it argues on appeal that the evidence is insufficient to support the jury verdict.  A jury verdict will not be overturned "unless the record is 'critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief.'"  Rotondo v. Keene Corp., 956 F.2d 436, 438 (3d Cir. 1992) (quoting Dawson v. Chrysler Corp., 630 F.2d 950 (3d Cir. 1980) (internal quotation omitted), cert. denied, 450 U.S. 959 (1981)).  Evidence that should have been admitted, but was not, may be considered as well.  Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1993).

We understand Lightolier to argue that the record, devoid of the evidence it maintains was improperly admitted and bolstered by the evidence that it maintains should have been admitted, would not be sufficient to uphold the jury verdict against it.  While we have already concluded that the magistrate judge's evidentiary rulings were not reversible error, we also find that the record would support the jury's conclusion that age was a determinative factor in the decision to terminate Abrams even if some of the objectionable evidentiary rulings had been otherwise.  Had the magistrate judge admitted the cumulative evidence of Lightolier's intent (evidence that we concluded might have been excluded in error but which was not shown to have been anything other than harmless error), we would still find that the record was not "critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief".

Rotondo v. Keene Corp., 956 F.2d at 438 (internal quotation and citation omitted) (internal quotation omitted)).  Significantly, in addition to evidence that Kurtz harbored age animus and that Abrams was replaced by a younger employee, Abrams offered testimony to show that Lightolier's proffered reason for his discharge was pretextual.  Abrams introduced evidence that after Lightolier became aware of Abrams's misjudgment and alleged wrongdoing in connection with the Midland contract, they did not terminate him, but rather gave him additional responsibilities and salary increases throughout his remaining years with the company.  Therefore, the record would still contain evidence from which the jury could conclude, as it did, that Lightolier's explanation for the discharge was pretextual and that Abrams was terminated because of his age.  The district court therefore did not abuse its discretion in refusing to grant Lightolier's motion for judgment as a matter of law or for a new trial.

## V.  Damages and Attorneys' Fees

In addition to raising issues as to its liability, Lightolier also appeals the back-pay and the attorneys' fees awards.  Lightolier maintains that the jury award for back pay should have been reduced by the amount of taxes that would have been payable had the same amount been earned by Abrams as income and that the award of attorneys' fees should have been reduced both to reflect an amount proportional to the damages award and for efforts expended on unsuccessful claims.

The question of what standard to apply in calculating attorneys' fees or costs is a legal question and therefore subject to plenary review. Sosebee v. Rath, 893 F.2d 54, 55 (3d Cir. 1990). The reasonableness of the amount of the award is reviewed only for abuse of discretion if the correct legal standard is applied and the findings of fact are not clearly erroneous. Northeast Women's Center v. McMonagle, 889 F.2d 466, 475 (3d Cir. 1989), cert. denied, 494 U.S. 1068 (1990). An abuse of discretion will have occurred if no reasonable person would adopt the trial court's view. Rode v. Dellarciprete, 892 F.2d 1177, 1182 (3d Cir. 1990).

## A. Back-pay Award

Lightolier sought a reduction in the back-pay award in its motion for judgment as a matter of law and, in denying that motion, the district court held that a back-pay award under the NJLAD likely represented nontaxable income and that as between a NJLAD plaintiff and a discriminating employer, the plaintiff should receive the benefit of a damages award that may not be taxable. Abrams v. Lightolier, 841 F. Supp. 584, 598 (D.N.J. 1994). Because the district court's holding rested on its determination of the legal standard for NJLAD back-pay awards, our review is plenary. We will affirm.

During trial, Lightolier's expert calculated Abrams's lost wages using a twenty-eight percent deduction for taxes that would have been owing on the award if it had been earned by Abrams as income. Abrams's expert testified to an amount that

was based on gross income and on cross-examination testified that to account for tax liability that figure should be reduced by twenty percent, with a five percent margin of error. The district court instructed the jury regarding damages for back pay in the following manner:

> Now I am going to explain to you back pay and front pay.
>
> In calculating the amount of back-pay damages to award to the Plaintiff, if you decide he is entitled to such an award because he was unlawfully discharged, you should first determine the period for which you will award such damages.
>
> * * *
> . . . Once you have determined the period, if any, for which you will award back-pay damages, you should next proceed to determine the gross amount of wages Plaintiff would have earned and the value of the fringe benefits Plaintiff would have received during that period had he not been discharged.
>
> Finally, once you have determined these gross amounts, you should deduct the following amount to arrive at a final figure for back-pay damages.
>
> Wages or salary or other income actually earned or received by the Plaintiff during that period.

App. 121-22 (emphasis added). When the court finished charging the jury, Lightolier's counsel objected to the instruction that gross pay should be used to determine the back-pay award. App. 129. The district court refused to alter its charge.

In its post-trial motions, Lightolier requested that the district court reduce the back-pay award to reflect what

would have been Abrams's tax liability on the award if it had been earned as income.[17]  Although the district court concluded that the back-pay award would not be taxable, it refused to reduce it, determining that as between the plaintiff and the employer, the plaintiff should reap the benefit of the exclusion of the award from income for federal income tax purposes.

Lightolier argues that the magistrate judge erred as a matter of law in instructing the jury that a back-pay award should be based on gross income, and in refusing to reduce the award to reflect the absence of tax liability.  Lightolier maintains that the award is nontaxable and that Abrams will thus obtain a windfall by receiving back-pay based on gross income without sustaining any tax liability on that amount.  Lightolier argues that Abrams will therefore be in a better financial position than if he had not been discriminated against and seeks an adjustment in the back-pay award to reflect Abrams's net income or a new trial on damages.  Because we find that the current law regarding the tax liability on a NJLAD back-pay award is not as clear as Lightolier posits, we predict that a New Jersey court would uphold an NJLAD back-pay award which was based

---

[17].    When, during deliberations, the jury asked whether an award to Abrams would be taxable, the magistrate judge again explained that a back-pay award should be calculated on gross income and that a front-pay award should be calculated on net income.  App. 1652.  As clarified by Lightolier's post-trial motions and the district court's resolution of them, the issue preserved for appeal was whether net or gross wages should have been considered by the jury in awarding back-pay damages, not whether the jury should have been instructed as to Abrams's tax liability on the award.  See Lightolier's Reply Br. at 45 n.33.

on gross income and we will therefore affirm the back-pay award in this case.

We find no clear answer in the law of the Supreme Court, this circuit, or the New Jersey courts as to whether an age discrimination back-pay award under the NJLAD represents taxable income. While guidance is provided by the Supreme Court's decision in United States v. Burke, 112 S. Ct. 1867, 1873 (1992), we believe the particular question posed by this appeal remains unanswered.

In Burke, the Court held that a Title VII back-pay award did not fit the exemption for nontaxable personal injury damages under the Internal Revenue Code because, while common law tort claims encompass "damages for lost wages, medical expenses, and diminished future earning capacity on account of the injury, [and] also [damages] for emotional distress and pain and suffering," as well as punitive or exemplary damages under appropriate circumstances, a Title VII back-pay award was intended to compensate for "'legal injuries of an economic character.'"[18] Id. at 1873 (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975)).

---

[18]. Under section 104(a)(2) of the Internal Revenue Code "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness" is excludable from taxable income. 26 I.R.C. § 104(a)(2). We note that amendments to Title VII made by the Civil Rights Act of 1991 allow a plaintiff to recover compensatory and punitive damages and thus throw doubt on the continued validity of the Burke holding. See Drase v. United States, 866 F. Supp. 1077, 1079 n.1 (N.D. Ill. 1994).

The federal statute most analogous to the NJLAD in this case is the Age Discrimination in Employment Act. However, it is currently unclear whether the Court's holding in Burke applies as well to back-pay awards under the ADEA which, unlike pre-1991 Civil Rights Act Title VII claims, provides for an award of punitive damages. Our own precedent, decided prior to Burke, holds that such an award is not subject to federal income tax under the personal injury damages exception. See Rickel v. Commissioner of Internal Revenue, 900 F.2d 655, 658-63 (3d Cir. 1990) (holding that the ADEA provides a tort-like remedy and that ADEA damages should therefore be treated like personal injury awards under the Internal Revenue Code). Subsequent to the Supreme Court's decision in Burke, other courts have also held that ADEA awards are not taxable, distinguishing Burke on the ground that ADEA damages are different in substance from the damages available under Title VII prior to the 1991 Civil Rights Act. See, e.g., Schmitz v. Commissioner of Internal Revenue, 34 F.3d 790 (9th Cir. 1994) (back-pay and liquidated damages); Purcell v. Seguin State Bank & Trust Co., 999 F.2d 950 (5th Cir. 1993) (back-pay award); Burns v. Commissioner of Internal Revenue, T.C. Memo. 1994-284, 67 T.C.M. (CCH) 3116 (T.C. 1994) (back-pay and liquidated damages); Bennett v. United States, 30 Fed. Cl. 396 (Ct. Cl. 1994) (holding that back-pay award is nontaxable income and liquidated damages award is taxable). Other courts, however, have extended Burke's holding to ADEA awards and have found them to be taxable income. See, e.g., Commissioner of Internal Revenue v. Schleier, No. 22909-20 (U.S.

T.C. July 7, 1993) (liquidated damages), aff'd, 26 F.3d 1119 (5th Cir. 1994) (table), cert. granted, 115 S. Ct. 507 (1994); Downey v. Commissioner of Internal Revenue, 33 F.3d 836 (7th Cir. 1994) (settlement award of back-pay and liquidated damages), rev'g 100 T.C. 624, No. 40 (1993); Shaw v. United States, 853 F. Supp. 1378 (M.D. Ala. 1994) (liquidated damages); Maleszewiski v. United States, 827 F. Supp. 1553 (N.D. Fla. 1993) (settlement award). We note that the Supreme Court has recently granted certiorari in Commissioner of Internal Revenue v. Schleier, 115 S. Ct. 507 (1994), to answer just this question.

Where there remains some uncertainty as to whether an employee will ultimately have to pay taxes on a discrimination claim award, we are confident that the New Jersey courts would not require that the award be calculated on net income. Cf. Wachstein v. Slocum, 625 A.2d 527, 536-37 (N.J. Super. Law Div. 1993) (holding that a jury instruction regarding the nontaxable nature of a damage award is not required in claim for retaliatory transfer brought under Title VII and NJLAD because law after Burke was still unsettled as to whether the award was subject to tax liability), certif. denied, 636 A.2d 521 (N.J. 1993). To hold otherwise where the law is unclear, places the risk of tax liability on the prevailing plaintiff rather than on the discriminating employer. That result would not be in keeping with the broad remedial policies behind the NJLAD.[19]  See McKenna

---

[19].     Furthermore, we note that it is not altogether clear that the nontaxable nature of a back-pay award mandates the use of gross income.  The parties have failed to cite, and our research has likewise failed to uncover, any New Jersey cases

<u>v. Pacific Rail Service</u>, 32 F.3d 820, 827-28 (3d Cir. 1994) (discussing legislative policy).  We therefore conclude that the district court did not err in instructing the jury to consider gross wages in determining Abrams's back-pay award under the NJLAD.

### B.  <u>Attorneys' Fees Award</u>

Under the NJLAD, reasonable attorneys' fees are available to a prevailing plaintiff as part of costs.  New Jersey Stat. Ann. § 10:5-27.1 (West 1993).  While the NJLAD does not provide further guidance in calculating a proper award, New Jersey courts have followed the rules established under the federal Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, in awarding fees pursuant to the NJLAD.  <u>See, e.g.</u>, <u>Robb v. Ridgewood Bd. of Educ.</u>, 635 A.2d 586 (N.J. Super. Ct. Ch. Div.

(..continued)
indicating that either gross or net income should be used under such circumstances.  This issue has engendered some disagreement in the federal courts as well.  <u>Contrast</u> <u>Johnston v. Harris County Flood Control Dist.</u>, 869 F.2d 1565, 1580 (5th Cir. 1989) (holding that nontaxable back-pay award under Title VII should "ideally" reflect net income), <u>cert. denied</u>, 493 U.S. 1019 (1990); <u>Purcell v. Seguin State Bank & Trust Co.</u>, 999 F.2d 950, 960-61 (5th Cir. 1993) (holding that an ADEA back-pay award more than twice the amount of net lost wages was excessive because the award is not taxable and a reduction to reflect net income was therefore proper) <u>with</u> <u>Redfield v. Insurance Co. of North America</u>, 940 F.2d 542, 547-48 (9th Cir. 1992) (holding that although an ADEA back-pay award is not subject to income tax liability, an employer may not refuse to pay an ADEA judgment in full on the ground that the amount it withheld reflected the amount that the plaintiff would have had to pay as income tax if the award had been earned as income); <u>Klein v. Secretary of Transp.</u>, 807 F. Supp. 1517, 1525 (E.D. Wash. 1992) (following <u>Redfield</u> and refusing to reduce ADEA back-pay damages to account for tax withholding).

1993); see also <u>McKenna v. Pacific Rail Serv.</u>, 817 F. Supp. 498, 518–19 (D.N.J. 1993) (using federal caselaw under § 1988 as a guide to attorneys' fee claim under NJLAD), <u>rev'd in part on other grounds</u>, 32 F.3d 820 (3d Cir. 1994).

Lightolier contends that the attorneys' fees award was improper in this case because it exceeded the amount of damages awarded to Abrams and because it did not properly reflect the time spent on claims on which Abrams did not succeed. We find both arguments to be without merit.

While the amount of the compensatory damages award may be taken into account when awarding attorneys' fees to a civil rights plaintiff, there is no rule that the fees award may be no larger than the damages award. <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983) (rejecting a rule that proportionality of a damages award and attorneys' fees award is required). On the contrary, the degree of the plaintiff's success will determine the appropriate attorneys' fee award. <u>See</u> <u>Farrar v. Hobby</u>, 113 S. Ct. 566, 574 (1992) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983)). The Supreme Court's recent explanation in <u>Farrar</u> that a federal civil rights plaintiff who obtains only nominal damages is not entitled to an attorneys' fees award, does not abrogate this rule. In <u>Farrar,</u> the Court noted that nominal damages reflect a vindication of the plaintiff's procedural due process rights but likewise reflect the fact that the plaintiff was unable to prove she had suffered any compensable injuries. In such a case, attorneys' fees are improper because they do not

reflect the plaintiff's success.  Farrar, 113 S. Ct. at 575.[20]

Lightolier's citation to Farrar therefore does not support its

argument that the award of attorneys' fees in this case

($546,379.59) was improper because it was greater than the

damages award ($473,953.00).  The New Jersey cases cited by

Lightolier are likewise unavailing, as they simply restate or

expound on the Hensley rule, or do not concern attorneys' fees

for discrimination claims.  See, e.g., Singer v. State, 472 A.2d

138 (N.J.), cert. denied, 469 U.S. 832 (1984) (applying Hensley

to a § 1983 claim).  We therefore reject Lightolier's

proportionality argument as a misstatement of the law.

Lightolier also argues that the magistrate judge erred

in not reducing the attorneys fees award to reflect time spent by

Abrams's counsel on unsuccessful claims.  Lightolier is correct

that a court is to consider the amount of time plaintiff's

counsel has spent on unsuccessful claims in determining the

appropriate attorneys' fees award.  See Robb v. Ridgewood Bd. of

Educ., 635 A.2d at 591 (where claims are distinct, time spent on

unsuccessful claims should not be awarded, but where claims

"'involve a common core of facts' or are 'based on related legal

theories'" the trial court does not have to exclude all time

spent on unsuccessful claims) (quoting Hensley, 461 U.S. at 435).

However, when the trial court applies the correct legal standard,

---

[20].    In Farrar, the jury found a conspiracy to deprive the
plaintiffs of their constitutional rights, but found there was no
evidence that any injuries were caused by this civil rights
violation.  113 S. Ct. at 575.

the court has discretion in determining the actual fees award.
Hensley, 461 U.S. at 437; Blum v. Witco Chem. Corp., 829 F.2d
367, 378 (3d Cir. 1987).  Based on our review of record, we are
convinced that the magistrate judge carefully considered the
claims on which Abrams did not succeed and made a reasoned
judgment that the time spent on these claims did not justify a
reduction in the fees award.[21]  Finding no abuse of discretion,
we will affirm the attorneys' fees award.

VI.   Abrams's Cross-Appeal Regarding the Award of Costs

In conjunction with his motion for an award of
attorneys's fees under the NJLAD, Abrams sought an award of costs
and out-of-pocket expenses totaling $39,834.92, for items such as
deposition transcripts, trial transcripts, travel, photocopies,
and other litigation expenses.  The district court denied the
bulk of these expenses and limited Abrams's recovery to $240.00,
representing those items enumerated as taxable costs under 28
U.S.C. § 1920.[22]  The district court limited the allowable costs

---

[21].       The magistrate judge concluded that the amount of time
spent on some of the claims was insignificant and that the facts
underlying other claims were closely tied to Abrams's NJLAD
claim.  See, e.g., App. 1666-67 ("I don't think there ought to be
a reduction for unsuccessful claims. . . . The claims that were
unsuccessful really don't represent any specific component of
time or effort in this case.  In other words, in order to obtain
a verdict that they obtained on the LAD claim, they had to
litigate everything else.").

[22].       28 U.S.C. § 1920 provides:

A judge or clerk of any court of the
United States may tax as costs the following:

on the ground that Federal Rule of Civil Procedure 54(d)(1),

which incorporates 28 U.S.C. § 1920, limits the award of out-of-

pocket expenses in a federal diversity action.  The district

court also concluded that Abrams had received sufficient

remuneration for the litigation through the generous attorneys'

fees award and that Lightolier should therefore not be

responsible for any additional expenses.[23]  We conclude that the

(..continued)

        (1) Fees of the clerk and marshal;

        (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

        (3) Fees and disbursements for printing and witnesses;

        (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

        (5) Docket fees under section 1923 of this title;

        (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

        A bill of costs shall filed in the case and, upon allowance, included in the judgment or decree.

[23].     The magistrate judge gave the following explanation in denying the majority of out-of-pocket expenses for which Abrams sought reimbursement.

        [E]ven if I were to consider them as legitimate items of costs, it is not reasonable to expect the defendant to reimburse Mr. Abrams for all of this stuff, transportation and parking, secretarial

district court applied the incorrect legal standard and will therefore vacate the award of costs and remand for application of the correct legal standard.

Abrams's request for costs presents an intriguing choice of law problem. Where there is a statutory provision shifting attorneys' fees and costs in a state statute creating the plaintiff's cause of action, a federal court exercising diversity or supplemental jurisdiction over that claim should, under Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), apply the state provision shifting fees and costs in the absence of a controlling federal statute, rule, or policy. E.g., Security Mut. Life Ins. Co. of New York v. Contemporary Real Estate Assoc., 979 F.2d 329 (3d Cir. 1992); McAdam v. Dean Witter

(..continued)
> assistance, binders, dividers, messenger service, paralegal costs--which I believe I have already awarded [as part of the attorneys' fee award]--meals, telephone calls. The only thing that I believe to be debatable here is photocopying and depositions. But the depositions under the federal rules are not reimbursable because they['re] about discovery depositions. . . .
> * * *
>
> That's the way you tried cases and you're getting paid for trying the case, Ms. Moses. I am awarding -- I am permitting costs to be added to this in the aggregate of clerk's fees and the attendance fees of witnesses embraced by 28 U.S.C. § 1821. . . .
> The other request for reimbursement of costs is denied.

App. 1675-76.

Reynolds, 896 F.2d 750, 774-75 (3d Cir. 1990).  On the other hand, under Hanna v. Plummer, 380 U.S. 460 (1965), where there is a valid applicable Federal Rule of Civil Procedure, it is to be applied by a federal court even where the plaintiff's claim is based on state law.

Rule 54(d)(1) of the Federal Rules of Civil Procedure requires the clerk of the court to award certain litigation expenses to the prevailing party as a matter of course.  These routine court "costs" are listed in 28 U.S.C. § 1920, and this assessment as a matter of course is made whether the plaintiff's underlying claim is federal or state.  Under the rules of Erie and Hanna v. Plummer, Rule 54(d)(1) will thus trump a state cost shifting provision with which it conflicts.  Cf. Exxon Corp. v. Burglin, 42 F.3d 948, 950-52  (5th Cir. 1995) (finding that Alaska procedural rule that allows at least minimal recovery of attorneys' fees in every civil appeal conflicts with Federal Rule of Appellate Procedure 38 which permits recovery of fees only when appellee successfully defends a frivolous appeal and holding that federal rule must therefore apply in diversity action).

There is, however, no federal statute or rule providing the rule of decision when a federal court is asked to award litigation expenses other than those enumerated as section 1920 costs.  Rule 54(d)(2) recognizes the possibility of awards of "attorney's fees and related non-taxable expenses" and establishes a procedure for asserting a right to such an award. This rule does not provide a rule of decision, however.  Rather,

it and the accompanying advisory committee comment recognize that there must be another source of authority for such an award.[24]

The reference in Rule 54(d)(2) to another source of authority is consistent with the general federal caselaw rule that there is no fee or cost shifting except as authorized by statute or rule.  Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240 (1975).  That source of authority need not be federal law, however.  Neither Alyeska nor Rule 54(d)(2), precludes a federal court from looking to state law to determine the rule of decision as to attorneys' fees in a state law case, and Erie requires it to do so.  Accordingly, the district court should have looked to New Jersey law to determine what nontaxable expenses related to attorneys' fees were authorized in this case.

Section 10:5-27.1 of the New Jersey Statutes Annotated (West 1993), a provision of the NJLAD, provides:

---

[24]. Rule 54(d)(2) provides:

> Claims for attorneys' fees and related non-taxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.

Commentary to the 1993 amendment which added paragraph (d)(2), clarifies that this new subsection

> establishes a procedure for presenting claims for attorneys' fees, whether or not denominated as "costs."  It applies also to requests for reimbursement of expenses, not taxable as costs, when recoverable under governing law incident to the award of fees.

Rule 54(d) advisory committee's note (1993).

> In any action or proceeding brought
> under this act, the prevailing party may be
> awarded a reasonable attorney's fee as part
> of the cost, provided however, that no
> attorney's fee shall be awarded to the
> respondent unless there is a determination
> that the charge was brought in bad faith.

New Jersey thus authorizes an award of an "attorney's fee as part of the cost," using the exact same wording as the federal civil rights fee shifting statute, 42 U.S.C. § 1988, and the Title VII fee shifting provision, 42 U.S.C. § 2000e-5(k).

We have found no helpful New Jersey Supreme Court or Appellate Division cases construing N.J. Stat. Ann § 10:5-27.1. However, these courts, as the District Court for the District of New Jersey has recently noted in a similar context, "generally look to cases interpreting the federal civil rights laws in construing the [NJ]LAD." McKenna v. Pacific Rail Serv., 817 F.Supp. 498, 518-19 (D. N.J. 1993), rev'd in part on other grounds, 32 F.3d 820 (3d Cir. 1994). We predict that the Supreme Court of New Jersey would do so here, particularly in light of the virtual identity of the relevant texts.

In West Virginia University Hospitals, Inc. v. Casey, 499 U.S. 83 (1991), the Supreme Court of the United States held that the word "costs" in section 1988 referred to the taxable costs referenced in Rule 54(d)(1) and enumerated in 28 U.S.C. § 1920. We predict that the Supreme Court of New Jersey would read "cost" in N.J. Stat. Ann. § 10.5-27.1 to refer to the costs

recoverable by the prevailing party as a matter of course (assuming no judicial directive to the contrary), i.e. those costs enumerated in N.J. Stat. Ann. § 22A:2-8 (West 1969).[25] That statute provides no authority for an award of out-of-pocket litigation expense other than a specified list of items similar to those listed in 28 U.S.C. § 1920.[26]  Florczak v. United Jersey Bank, 591 A.2d 1023, 1024 (N.J. Super. Ct. App. Div. 1991).

---

[25].        Rule 4:42-8(a) of the New Jersey Court Rules provides: "Unless otherwise provided by law, these rules or court order, costs shall be allowed as of course to the prevailing party."

[26].  N.J. Stat. Ann § 22A:2-8 provides:

>         A party to whom costs are awarded or allowed by law or otherwise in any action, motion or other proceeding, in the Law Division or Chancery Division of the Superior Court is entitled to include in his bill of costs his necessary disbursements, as follows:

>         The legal fees of witnesses, including mileage for each attendance, masters, commissioners and other officers;

>         The costs of taking depositions when taxable, by order of the court;

>         The legal fees for publication where publication is required;

>         The legal fees paid for a certified copy of a deposition or other paper or document, or map, recorded or filed in any public office, necessarily used or obtained for use in the trial of an issue of fact or the argument of an issue of law, or upon appeal, or otherwise;

>         Sheriff's fees for service of process or other mandate or proceeding;

This leaves us with the issue of whether the New Jersey Supreme Court would interpret the phrase "a reasonable attorney's fee" broadly enough to include the expenses which Abrams claimed but was denied by the district court. Some, like his claim for his own personal expenses in traveling to attend the deposition of another witness, clearly cannot be squeezed into that rubric. See A. J. Tenwood Assoc. v. Orange Senior Citizens Housing Co., 491 A.2d 1280, 1288 (N.J. Super. Ct. App. Div.), certif. denied, 501 A.2d 976 (N.J. 1985). In considering Abrams's other claims, however, we believe that the New Jersey Supreme Court would look to the United States Supreme Court's construction of "attorney's fees" in section 1988.

In Missouri v. Jenkins, 491 U.S. 274 (1989), the Court was presented with the issue of whether a fee for the work of law clerks and paralegals could be part of "a reasonable attorney's fee" within the meaning of section 1988 and, if so, whether the "fee" should be at the market rate charged to private clients or limited to the out-of-pocket cost to the attorney. The Court held in part:

> Clearly, a "reasonable attorney's fee" cannot have been meant to compensate only work performed personally by members of the bar. Rather, the term must refer to a reasonable fee for the work product of an attorney.

(..continued)

> All filing and docketing charges paid to the clerk of court;
>
> Such other reasonable and necessary expenses as are taxable according to the course and practice of the court or by express provision of law, or rule of court.

> Thus, the fee must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit. The parties have suggested no reason why the work of paralegals should not be similarly compensated, nor can we think of any.

Missouri v. Jenkins, 491 U.S. at 285. The Court further held that recovery should be at the market rate billed to private fee-paying clients so long as the rate used to compensate the attorney was the community rate charged by an attorney who billed separately for the work of paralegals and law clerks. Id. at 288-89. The Court thereby avoided the possibility of double payment that would occur if these other costs were subsumed, for example as part of ordinary overhead, in the attorney's hourly rate.

The types of expenses available as part of a reasonable attorney's fee is not, however, limitless. We know from West Virginia University Hospital that the reading given "attorney's fee" in Jenkins, does not include fees paid for expert witnesses and other expenses that have traditionally been considered a category of litigation expenses distinct from fees payable for the legal services of the litigating attorney. Thus, it includes only those litigation expenses that are incurred in order for the attorney to be able to render his or her legal services. Under these rules, the following are generally recoverable under section 1988 when it is the custom of attorneys in the local community to bill their clients separately for them:

(a)   reproduction expenses;

(b)   telephone expenses of the attorney;

        (c)   travel time and expenses of the attorney;

        (d)   postage.

Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994); Associated

Builders & Contractors of La., Inc. v. Orleans Parish School Bd.,

919 F.2d 374, 380 (5th Cir. 1990); Ramos v. Lamm, 713 F.2d 546,

559 (10th Cir. 1983); Northcross v. Board of Educ., 611 F.2d 624,

639 (6th Cir. 1979), cert. denied, 447 U.S. 911 (1980), and cert.

denied, 477 U.S. 911 (1980); Dickinson v. Indiana State Election

Bd., 817 F. Supp. 737, 752 (S.D. Ind. 1992).

        We predict the Supreme Court of New Jersey would adopt

this same approach.  Some of the out-of-pocket expenses for which

Abrams sought reimbursement consisted of these types of

recoverable expenses.  The district court therefore erred in

denying recovery because these items were not listed in 28 U.S.C.

§ 1920.[27]  We therefore vacate the award of costs and remand to

the district court for reconsideration.


                              VII.

        The district court properly instructed the jury as to

the standard of proof for a pretext claim of age discrimination

under the NJLAD by requiring that Abrams prove that his age was a

---

[27].      To the extent the district court's attorneys' fees
award included some of the claimed expenses as overhead,
compensating Abrams for these expenses directly will result in a
double recovery.  Because the district court is in the best
position to know which billable expenses it has already included
in the attorneys' fees award, we leave it to the district court's
discretion to determine for which out-of-pocket expenses, if any,
Abrams has already been compensated.

determinative factor and a but-for cause of the decision to terminate him.  Likewise, none of the court's evidentiary rulings warrant reversal of the jury verdict.  We affirm the judgment in Abrams's favor on the NJLAD claim and the damages and attorneys' fees award in his favor.  We remand only as to the award for costs and out-of-pocket expenses and instruct the district court to recalculate the proper cost award consistent with this opinion.